DUNKLIN COUNTY, *ex relatione*, v. THE DISTRICT COUNTY COURT OF DUNKLIN COUNTY.

1. A writ of mandamus will not lie to correct the errors of inferior tribunals by annulling what they may have done erroneously, nor to guide their discretion, nor to restrain them from exercising power not delegated to them ; it will not, therefore, lie to a county court, directing it to vacate an order selling swamp lands to a railroad company in payment of a subscription of stock, and commanding the county court and all others to desist from carrying said order into execution.

2. The district county court within and for the county of Dunklin had power to transfer alternate sections of the "swamp lands" of Dunklin county to the Cairo and Fulton railroad company in payment of a subscription to the stock of that company made by said county court.

3. The trust, created by the acts of Congress of September 28th, 1850, granting swamp lands to the state of Missouri, is a personal trust reposed in the public faith of the state, and not a property trust fastened by the terms of the grant upon the land itself and following it into whose hands soever it may pass.

This was an application for a mandamus in the name of the county of Dunklin by Nathaniel G. Murphy, superintendent of public works in and for said county. The petitioner, after setting forth the grant to the state of Missouri of the swamp lands by act of Congress of September 28, 1850, for the purpose of enabling the state to reclaim them by means of levees and drains; also that the state of Missouri had by the act of February 23, 1853, granted to the county of Dunklin the swamp and overflowed lands within its limits, proceeds as follows: " Your petitioner further represents, that on the 18th December, 1855, the district county court within and for the counties of Dunklin, Stoddard and Butler, a court possessing the jurisdiction of a county court within and for each of said counties, by an order made on that date, at the December term of said court, did order and direct that the sum of $100,000 be subscribed by the said county of Dunklin to the capital stock of the Cairo and Fulton railroad company, a company duly incorporated by the general assembly of the state of Missouri for the purpose of constructing a railroad, as your petitioner believes, from the town of Fulton, in the state of Arkansas, to a point near or opposite to the city of Cairo, in the state of Illinois, and did appoint one George W. Mott on behalf of said county; and the said court did in said order further order and direct that alternate sections of the swamp and overflowed land so belonging to the county of Dunklin, and which had been granted by the United States to the state of Missouri, and by said state to the said county of Dunklin as aforesaid, commencing at the north boundary of said county, and extending thence southwards, be sold, transferred and conveyed by deed to said railroad company at the price of one dollar per acre, in an amount sufficient to fully pay off the subscriptions to the capital stock aforesaid, making the quantity of overflowed and swamp lands so ordered to be sold, 100,000 acres. And the said court, by said order, did further appoint the said George W. Mott, agent for and on behalf of said Dunklin county to execute deeds to said railroad company of the said overflowed and swamp lands,

in the quantity aforesaid, in payment of the subscription to said capital stock, and to vote thereon on behalf of said Dunklin county, as will more fully appear by a certified copy of the order of said district county court hereto annexed and marked exhibit A; and your petitioner further represents that the said Cairo and Fulton railroad is not located upon, nor will the same, as projected, pass through any part of the said county of Dunklin; nor will the said subscription to the capital stock of said company, nor the conveyance of said overflowed and swamp lands in payment of such subscription, as directed by said order, in any manner tend to the reclaiming of said lands or any portion thereof, or to the building of the levees and drains contemplated by the terms of said act of Congress; on the contrary, your petitioner states that the appropriation of said lands, as directed by the order of said court, is in direct violation of the trust under which the same are held by said county, and contrary to the wishes of a large majority of the inhabitants thereof; that the said district county court, in directing the conveyance of said overflowed and swamp lands to the Cairo and Fulton railroad company, acted without authority of law; that the act of said court is done in bad faith to the government of the United States, and against the interest of citizens of the said county of Dunklin. Your petitioner further says that, at the March term, 1856, of the said district county court for the county of Dunklin, proceedings were had and taken in due form of law to set aside, vacate and annul the order of said court above recited; that said court then refused and still does refuse to vacate said order; that the said court, by its officers and agents, is now about to proceed to execute the same in violation of the rights of said county and of the trusts aforesaid, unless restrained by the order of this court. Wherefore your petitioner, for himself and on behalf of the said county of Dunklin, prays that a writ of mandamus may be awarded from this honorable court to be directed to the said district county court, commanding said court to show cause, if any it have, why so much of said order made at the December

term, as directs alternate sections of said overflowed and swamp lands, owned by said county of Dunklin, as described in said order, to be sold and conveyed to said Cairo and Fulton railroad company, in payment of the subscription to the capital stock of said company, as well as so much of said order as appoints the said George W. Mott an agent for and on the part of said county to execute a deed or deeds to said company of said lands in payment of said subscription, should not be rescinded, vacated and annulled ; and further, commanding said court to show cause why it, its officers and agents, and particularly the said George W. Mott should not be ordered and directed to desist from further attempting to execute the order of the said district county court ; and that, in default of such cause shown, the said writ of mandamus may be made peremptory."

Upon this petition an alternative mandamus issued, to which a return was made by Jonas Eaker, judge of said county court. Upon the coming in of this answer, which it is unnecessary to set forth, the relator's counsel moved for a peremptory writ of mandamus.

*S. A. Holmes* and *Romyn*, for relator.

I. The grant by Congress to the several states, of the swamp and overflowed lands lying within them, purports to be made expressly for the purpose of enabling them to reclaim such lands by the construction of levees and drains, and upon the proviso that the proceeds of said lands, whether from sale or by direct appropriation in kind, shall be applied exclusively, as far as necessary, to the purpose of reclaiming said lands by means of the levees and drains aforesaid. The attempt to purchase railroad stock with these lands is an entire misappropriation of the subject matter of the grant, and the only question is, whether the proviso above recited imposes upon the grantee of the state a duty in respect to the disposition of these lands, the performance of which can be enforced by this process. (9 U. S. Stats. at large, 519.) The act of Congress is not simply a grant coupled with a trust addressed to the conscience of the grantee. It is a grant with legislative provisions as to the dis-

position of the thing granted. The act of the general assembly of the 24th February, 1853, (Sess. Acts, 1853, p. 137, sec. 32,) and the act of December 7, 1855, (Sess. Acts, 1855, p. 353,) so far as they authorize and direct the conveyance of these lands in payment of subscriptions to railroad stock, before the provisions of the act of Congress shall have been complied with, are mere nullities, and should have been disregarded by the respondent. The county of Dunklin, standing in the place of the original grantee, takes these lands subject to the provisions of the act of Congress, and the district county court, in its capacity of manager of the county property, was bound to observe the act of Congress, and not the acts of the general assembly above mentioned. As to the question of jurisdiction, it may be admitted that these trusts could not be enforced against the sovereign state of Missouri. The moment these lands become vested in a party over whom the court has jurisdiction, it will compel, by any lawful process, the observance of the provisions of the act of Congress touching their disposition. (See Sess. Acts, 1851, p. 238 ; Sess. Acts, 1853, p. 108 ; Sess. Acts, 1855, p. 474.)

The point that an appeal was prayed, granted and not prosecuted, and that that was the proper remedy, is not well taken. An appeal will not lie from the order of a county court, where the court is acting in its administrative capacity as custodian of the county property. To admit of an appeal, the interest of others must be directly affected by the proceedings of the court. (Overbeck & Shaw v. Galloway, 10 Mo. 364.)

*O. G. Cates*, for respondent.

LEONARD, Judge, delivered the opinion of the court.

1. The defendants having put in their answer to the alternative mandamus, we proceed to consider the case as upon a demurrer to it, and the first remark we have to make is that this is not an appropriate remedy for the party, even if he be entitled to relief. The command of the writ is that the Dunklin district

county court " vacate their order selling to the Cairo and Fulton railroad company 100,000 acres of swamp lands of the county, and appointing a commissioner to make the conveyance in payment of the stock subscription of the county to the road ; and that the court and all others desist from carrying their said order into execution ;" and of course the question is, whether this relief can be had by the writ of mandamus. This court has express authority, under the constitution, to issue this and other original remedial writs, and to hear and determine the same ; but in what cases we may issue them has not been prescribed in the constitution itself, nor by our written law, otherwise than by the adoption of the common law, which defines the class of cases to which they are respectively applicable. The writ of mandamus is in form a command in the name of the state, directed to some tribunal, corporation, or public officer, requiring them to do some particular thing therein specified, and which the court has previously determined that it is the duty of such tribunals or other person to perform. It issues in England only out of the King's Bench, the highest court in the kingdom, and was introduced, it is said, in order to prevent disorder from a failure of justice or defect of police, and is therefore granted only in cases when the law has provided no specific remedy, and in justice and good government there ought to be one. It does not lie to correct the errors of inferior tribunals by annulling what they have done erroneously, nor to guide their discretion, nor to restrain them from exercising power not delegated to them ; but it is emphatically a writ requiring the tribunal or person to whom it is directed, to do some particular act appertaining to their public duty, and which the prosecutor has a legal right to have done. We could not therefore, by means of this writ, correct the errors or control the discretion of this tribunal in the discharge of an administrative duty, even if we had the power to do so. But the parties have argued the whole matter, and desire our opinion upon all the questions involved ; and as it may be a matter of public interest that our opinion should be known, we shall not

withhold it.   These questions are, whether, under the several acts of the legislature upon this subject, the district county court had authority to make the sale complained of, and, if the authority was expressly given by these acts, whether it was competent to the state legislature, in view of the trust annexed to the grant, to authorize such a disposition of the property.

2. This district county court was established by the act of 1st March, 1855, (Sess. Acts, 1855, p. 474, 475,) which provided that it should " possess all the powers and perform all the duties that the respective county courts now possess or may perform in the counties of Stoddard, Dunklin and Butler ;" and by the general law (R. C. 1845, tit. Courts, p. 332, § 15), all county courts have the control and management of the property, real and personal, belonging to the county, and full power and authority " to sell and to cause to be conveyed any real estate, goods or chattels belonging to the county, appropriating the proceeds of such sale to the use of the county."   By the act of the 23d of February, 1853, (Sess. Acts, 1853, p. 108,) the swamp lands in the counties of Dunklin, Stoddard, Butler, and certain other south-eastern counties, are donated to these counties respectively, upon the terms and provisions of the act entitled " An act donating certain swamp and overflowed lands to the counties in which they lie," approved March 3d, 1851 ; and by this act (Sess. Acts, 1851, p. 239) the swamp lands in the other counties are donated to them respectively for the purpose of reclaiming them according to the provisions of the original grant, and for this purpose they are to be sold under the orders of the county courts, and the nett proceeds, over and above what may be necessary to drain them, are made part of the county common school fund ;  and under the general railroad law of 1851 (Sess. Acts, 1851, secs. 29, 32) the county courts are empowered to subscribe stock, in behalf of their counties, in railroad companies, and when any county has swamp land under the grant of the state, the county court is expressly authorized to sell the same in order to pay its railroad stock subscription ; and by the act of 7th December, 1855, (Sess. Acts,

1855, p. 353,) it is made the duty of the county courts of Dunklin, Stoddard and certain other south-eastern counties, whenever a majority of the voters petition them respectively to that effect, to transfer alternate tracts of their swamp lands to the Iron Mountain or Cairo and Fulton railroad, "at not less than one dollar per acre, payable in the stock of the company." Under these several statutes, it is manifest that this county court had authority to dispose of the lands as they have done, and the only remaining question is, whether it was competent for the legislature of this state to authorize such a disposition of them.

3. By the act of Congress of 28th September, 1850, (9 U. S. Stats. 519,) the terms of the grant to the state of Arkansas are, " to enable the state of Arkansas to construct the neces-. sary levees and drains to reclaim the swamp and overflowed lands therein," and, by a subsequent section of the same act, it is declared that the provisions of the act are extended to every other state in which such lands may be found. The original grant, made by the state to the counties, was in order to execute this trust, and it is supposed that the trust is fastened upon the lands, so that they can not be disposed of by the state for any other purpose. This, however, is not correct; the trust reposed by the United States is in the state of Missouri; it is a personal trust in the public faith of the state, and not a property trust, fastened by the terms of the grant upon the land itself, and following it into whose hands soever it may pass. It is proper, however, here to remark, in vindication of the state, that the original grant by the United States contemplates, or course, a sale of the land, in order to render it available for the purposes of the trust, and it is not to be supposed that this state will be guilty of a breach of her good faith by applying the stock for which the land is sold to any other purpose, without the consent of the United States. But however that may be, it is a matter exclusively within the control of the legislature. No private rights of property are invaded, and we have no authority to interfere in the execution of the

trust. The grant of the sixteenth sections in the state of Michigan was to the state for the use of schools, and in Cooper v. Roberts, (18 How. 181,) the Supreme Court of the United States, speaking in reference to the validity of a sale of these lands, made under the authority of the state, without the consent of Congress, said : " The trusts, created by these compacts, relate to a subject certainly of universal interest, but of municipal concern, over which the power of the state is plenary and exclusive. In the present instance the grant is to the state directly, without limitation of its power, though there is a sacred obligation imposed on the public faith." In Long & Long v. Brown, (4 Ala. 622,) the Supreme Court of Alabama decided that a sale of the sixteenth sections, under a law of the state, was valid in point of law, without the assent of the United States, although, in order to preserve the public faith, the legislature had previously procured such consent.

The judgment on the demurrer is for the defendant, and the peremptory mandamus refused.