## MAYERS ET AL. VS. BYRNE ET AL.

By the Act of Congress of June 23d, 1836, supplemental to the act for the admission of Arkansas into the Union, and the ordinance of the State of the 18th October, 1836, accepting the provisions of the supplemental act, the title to the sixteenth sections granted for the use of common schools, vested absolutely in the State, and the act of Congress of 3d March, 1843, imposing conditions upon the power of sale, is not binding upon the State.

Conceding that commissioners appointed by special act of the General Assembly for the sale of a sixteenth section, must comply with the terms of the act in order to make a valid sale, yet if there be an irregularity, in failing to pursue the mode prescribed by the act, it is within the powers of the General Assembly to confirm the sale.

*Appeal from Sebastian Circuit Court in Chancery.*

Hon. FELIX J. BATSON, Circuit Judge.

FOWLER & STILLWELL, for the appellants.

S. H. HEMPSTEAD, for the appellees.

Whether the United States had any right to the sixteenth sections, or could exercise any legitimate control over them after the grant in the compact of 1836, or whether those lands belonged to the State, is a material inquiry. It must be admitted that the grant by Congress was absolute, and was intended to vest the property of the sixteenth sections, in the State, to be held in perpetuity for the use and benefit of the inhabitants of the township.

The legal title to those lands could not vest in the inhabitants of the township, because they had no corporate existence, not could such a capacity be conferred upon them by the act of Congress; and it was not intended to be conferred. The title

being in the State by virtue of the grant, the Legislature of
Arkansas, without any authority by the act of 1843, could have
rightfully and legally made provision for the sale of these lands,
either publicly or privately, and with or without the consent of
the inhabitants of the township; or such consent might have
been implied.

The grant was absolute and unconditional. Its language
was "that section numbered sixteen, in every township, and
when such section has been sold, or otherwise disposed of,
other lands, equivalent thereto, and as contiguous as may be,
shall be *granted to the State* for the use of the inhabitants of
such township for the use of schools." *Digest*, 81; 5 *Stat.*, 58;
*Lesseur vs. Price*, 12 *How. S. C. R.* 60; *Long vs. Brown*, 4 *Ala.*
622; *Maupin vs. Parker*, 3 *Mis.* 310; *Payne vs. St. Louis Co.*, 8
*Mis.* 473; *Bradley vs. Case.* 3 *Scam.* 585.

The allegations in the bill charging fraud against the com-
missioners and Bishop Byrne, as to the sale of this section, are
proved to be as outrageous as they are grossly false.

It may be safely assumed that the grant vested the sixteenth
sections in the State; that the Legislature had full power to sell
the same, in any manner that might be designated, and that
such sale conveyed title to the purchaser, and was binding on
the inhabitants.

The act of Congress of 1843, conferred no power whatever,
and that body might just as well have passed an act regulating
the sale of the land granted to this State for a seminary of
learning.

Under the act of the Legislature of 21st December, 1846,
(*Acts* 1846, *p.* 188,) the commissioners, with the consent of a
majority of the taxable inhabitants of the township, were em-
powered to sell the whole section in one tract at private sale,
and "convey the same by deed absolutely to the purchaser,
and upon the payment of the purchase money, such sale shall
be as valid as if made at public auction."

The mode of obtaining the consent of the inhabitants is not
indicated. Nor does the law require that the evidence of con-

**310** CASES IN THE SUPREME COURT

Mayers et al. vs. Byrne et al. [JANUARY

sent shall be preserved or filed. The presumption is, that the law was complied with, until the contrary appears, (*Burgess vs. Pue*, 2 *Gill.* 254), and the commissioners will be presumed to have done their duty. *Jackson vs. Hampden*, 2 *App.* 37.

The complainants have not succeeded in proving that a majority of the taxable inhabitants at that time, were opposed or refused their consent to the sale. But it has been proved that a majority — nay, three-fourths of the taxable inhabitants favored the sale.

The proof is clear that the funds paid by Bishop Byrne have been used by the county. This amounts to a ratification of the sale. *Story's Agency* 253, 254; *Forrester vs. Bordman*, 1 *Story's Rep.* 43; *Long vs. Brown*, 4 *Ala.* 631.

But the Legislature in 1852, passed "an act to confirm the sale of section sixteen, in township eight, north of range thirty-two west," approved 31st December, 1852, and which reads as follows, viz:

· "SECTION 1. *Be it enacted by the General Assembly of the State of Arkansas*, That the sale of section sixteen, in township eight, north of range thirty-two west, as made by John Rogers, Joseph Bennett, and George S. Bernie, commissioners, to Andrew Byrne, Bishop of Little Rock, by deed bearing date the 4th day of January, 1848, for the consideration of the sum of five thousand two hundred and fifty dollars, be, and the same is hereby in all things confirmed, and the title in fee simple to said sixteeth section shall fully vest in said Andrew Byrne, Bishop of Little Rock."

"SEC. 2. That this act shall be in force from its passage." *Acts of* 1852, *p.* 46.

It has been shown that the Legislature has full power over the sixteenth sections; and whatever irregularities may have existed in the sale, or want of power in the commissioners, or want of consent on the part of the inhabitants, in relation to the sixteenth section in controversy, this act confirmed the sale and vested a complete title in Bishop Byrne.

Mr. Chief Justice ENGLISH delivered the opinion of the Court.

This was a bill to set aside the sale of a sixteenth section, on the alleged grounds of fraud and illegality in the sale. The bill was filed in the Sebastian Circuit Court, on the 16th Dec., 1853, by Abraham G. Mayers, Jeremiah R. Kennady and Thomos Vernon, citizens of congressional township No. 8, north of range 32 west, in Sebastian county, on behalf of themselves, and all of the other inhabitants of the township, except John Rogers, George S. Bernie, and Joseph Bennett, who, together with Andrew Byrne, were made defendants. The sixteenth section of the township above referred to, is the one in controversy. The sale which the complainants sought to set aside, was made to Byrne by his co-defendants, as commissioners, under an act of the General Assembly. The bill, the answer of Byrne, and the depositions, make a voluminous transcript; but we shall state such of the facts only as are deemed material to a proper understanding of the points upon which the case must be determined.

By act of Congress of 23d June, 1836, supplemental to the act for the admission of the State of Arkansas into the Union, section numbered sixteen in every township was granted to the State, for the use of the inhabitants of such township, for the use of schools. *Digest p.* 81.

By ordinance of 18th October, 1836, the General Assembly accepted the provisions of the supplemental act. *Digest, p.* 86.

At the time of the admission of the State, the government of the United States occupied the sixteenth section in question as a garrison for her troops, and continued so to occupy it until April, 1846, when the troops abandoned it. During the time the section was occupied as a garrison, the government of the United States erected valuable improvements upon it, for the accommodation of officers, soldiers, etc., which were surrendered to the agents of the State, when the troops were withdrawn.

By act of Congress of February 15th, 1843, the Legislatures

of Illinois, Arkansas, Louisiana, and Tennessee, were authorized to provide by law for the sale and conveyance in fee simple of all or any part of the lands theretofore reserved and appropriated by Congress for the use of schools within said States, and to invest the money arising from such sales in productive funds for the support of schools, etc., within the several townships, etc., for which the lands were originally reserved and set apart: *Provided*, That said lands, or any part thereof, should in no wise be sold without the consent of the inhabitants of such townships, etc., to be obtained in such manner as the Legislatures of said States might direct, etc. *Digest, p.* 83.

By act of the General Assembly of 9th January, 1845, the defendants, Rogers, Bernie and Bennett, were appointed commissioners to offer for sale to the Secretary of War the sixteenth section in question, for a military post, on such terms and at such price as might be fixed upon by them. And if the Secretary declined to make the purchase, the commissioners were empowered to demand possession of the section, of the officers of the government of the United States, and to procure an assessment and payment of damages for waste committed by the government troops. The commissioners were further empowered, on obtaining possession of the section, to cause such part thereof as they might deem expedient, lying adjacent to the town of Fort Smith, to be surveyed off into streets, blocks and lots corresponding with the plan of the town, and to make sale thereof on ten years credit. The proceeds of the sale, and the damages assessed against the government to be employed for school purposes in the township, etc. *Acts of* 1844–5, *p.* 85.

It seems that the Secretary of War declined to purchase the land, and the commissioners made no sale under the act, but they obtained possession of the section with the improvements thereon, about the time above stated, See *Acts of* 1846, *p.* 40, 187.

By act of 21st December, 1846, the act of 9th January, 1845, was repealed, and the following enacted:

" That John Rogers, Joseph Bennett, and George S. Bernie be, and they are hereby appointed commissioners to sell said 16th section, (in township 8, north of range 32 west,) in the following manner, to wit: That they may cause the said section, or so much thereof as lies adjacent to the town of Fort Smith, to be laid off into town lots, corresponding with the plat of said town; or may cause the same to be sub-divided according to law, and sell the said lots or sub-divisions, at public auction, on a credit of ten years, with interest, giving three months notice of the time, place and manner of sale, in any newspaper printed in Crawford county: Provided, That the commissioners, with the consent of a majority of the taxable inhabitants of said township, shall have power to sell the whole of said section in one tract, at private sale, and convey the same by deed, absolutely, to the purchaser, and upon payment of the purchase money, such sale shall be as valid as if made at public auction."

The commissioners were required by the act to take an oath for the faithful performance of their duties, etc., and to pay the proceeds of the sale over to the trustees of the township, to be employed for school purposes therein.

Under the provisions of this act the commissioners sold the entire section to the defendant, Byrne, on the 4th of January, 1848, for $5,250, in cash; and executed to him a deed therefor, reciting the provisions of the act, and stating that the sale was made with the consent of a majority of the taxable inhabitants of the township, as would appear by a certificate annexed to the deed.

Appended to the deed is a paper signed by 105 persons, purporting to be taxable inhabitants of the township, reciting that the commissioners had been offered $5,000 in cash for the section, and instructing them to sell and convey the land for that sum, etc. Also a certificate of the commissioners that the signatures to the paper were the names of a large majority of the inhabitants of the township, etc.

It appears that Rogers and Bernie, two of the commissioners,

agreed to sell the section to Byrne for $5,000, but that Bennett, the other commissioner, thinking that an insufficient price for the land, would not agree to sign the deed, without the payment of the additional sum of $250, which Byrne consented to pay, and Bennett signed the deed.

The whole of the purchase money was turned over by the commissioners to the officers entitled to take charge of it, as a school fund, and put out upon interest.

At the time of the sale, the commissioners put Byrne into possession of the property, and he has continued to hold it ever since.

On the 31st December, 1852, the General Assembly passed an act confirming the sale, as follows:

" That the sale of section sixteen, in township eight, north of range thirty-two west, as made by John Rogers, Joseph Bennett, and George S. Bernie, commissioners, to Andrew Byrne, Bishop of Little Rock, by deed bearing date the fourth day of January, 1848, for the consideration of the sum of five thousand, two hundred and fifty dollars, be, and the same is hereby in all things confirmed, and the title in fee simple to said sixteenth section shall fully vest in the said Andrew Byrne, Bishop of Little Rock. *Acts of* 1852, *p.* 46.

1. The fraud in the sale charged in complainants' bill, is, substantially, that if the section had been laid off into town lots, and sold at public sale, as provided by the act of 21st December, 1846, it would have sold for as much as $25,000. But that Rogers was the original proprietor of the town of Fort Smith, and owned a large number of lots therein. That Bernie was also the owner of a number of lots in the town, and of adjacent lands. That they were both personally interested in preventing the sixteenth section from being laid off into town lots, and sold in competition of lots, etc., owned by them. That to prevent this, they fraudulently combined with Byrne, a Roman Catholic Bishop, to sell the entire section to him at a sacrifice, he agreeing to retain it in a body, and not to permit it to be laid off into town lots, and sold in competition with theirs, etc. That Byrne was aware of the personal interest which

the two commissioners had in the matter, and of their fraudu-
lent design, and availed himself thereof to purchase the pro-
perty for a sum much below its value, etc.   That the two com-
missioners and Byrne having entered into such fraudulent
compact, a paper was drawn up instructing the commissioners
to sell the entire section to Byrne at the price agreed on, (5,000),
and circulated among the inhabitants of the township for sig-
natures.   That the names to the paper annexed to the deed
were obtained by representations made to the subscribers, that
the Bishop intended to erect a college, and establish a colony
of artizans, mechanics, farmers, etc., thereon, which he had
failed to do.

Rogers and Bernie did not answer the bill.   Byrne answered,
denying all the allegations of the bill which imputed fraud to
him, in the most positive manner; and also denying any know-
ledge of fraudulent motives, or conduct in the sale, on the part
of the commissioners.   He avers that he purchased the pro-
perty in good faith, and for a fair price, and upon no other
conditions or stipulations than such as were expressed in the
deed, etc.

The depositions on the part of the complainants prove that
Rogers and Bernie were largely interested in the town of Fort
Smith.   That the sixteenth section was sold for much less than
its value, with the improvements thereon.   That if it had been
laid off into lots, and sold at public auction upon credit,
it would have brought a much larger sum than the Bishop gave
for it.   The witnesses vary in their estimates of what it would
probably have sold for, from $8,000 to $25,000.

On the contrary, an equal number of witnesses on the part
of the defendants, piove that the Bishop paid a full and fair
price for the property.   That the sale to him for $5,250 in cash,
was a better sale for the inhabitants of the township than could
probably have been made by lots, at auction, upon credit, con-
sidering the contingencies of collection, etc.

This part of the case may therefore be dismissed by remark-
ing that the complainants have failed to establish the allega-

tions of fraud in the sale, so far as they were intended to affect the defendant, Byrne.

2d. The bill alleges that the paper annexed to the deed was not signed by a majority of the taxable inhabitants of the township: and the complainants exhibit a list of 135 names of persons, which they aver were taxable inhabitants of the township at the time of the sale, and did not sign the paper annexed to the deed. The bill also alleges that some of the persons who signed the paper appended to the deed, were not, at the time of the sale, taxable inhabitants of the township. In other words, the complainants insist that a majority of the taxable inhabitants of the township did not consent to the sale made to Byrne, that the sale was therefore illegal, and that the act of the General Assembly confirming it was void.

Byrne states in his answer that he purchased the property upon the representation of the commissioners, that a majority of the taxable inhabitants had consented to the sale, which he averred to be the fact; and that a number of the persons upon the complainants' list were women, children, non-residents, etc., etc. He also insists that the matter has been put to rest by the act confirming the sale.

The witnesses on the two sides are in conflict as to whether the paper annexed to the deed, was signed by a majority of the taxable inhabitants of the township, or not, Without undertaking to determine from so much contrariety of testimony, what the truth of the matter was, it may be assumed, for the purposes of this case, that the weight of testimony is in favor of the allegation of the bill, that a majority of the taxable inhabitants of the township did not sign the paper instructing the commissioners to make the sale to Byrne.

By the act of December 21st, 1846, the commissioners were empowered to sell the section in one entire tract, at private sale, with the consent of a majority of the taxable inhabitants of the township. It may be conceded that, as the commissioners acted under a special power, it was necessary for them to comply with the terms of the power in order to make a valid

sale, and that it was incumbent on the purchaser to take care that there was no departure from the provisions of the power. In this act the Legislature did not direct the mode in which the consent of the inhabitants was to be obtained, and the commissioners were therefore left to adopt such mode as they might deem most expedient.   They adopted the plan of circulating a paper for signatures, reciting the terms of the sale, which they proposed to make, and instructing them to close the sale on those terms.   Conceding that a majority of the taxable inhabitants of the township did not sign the paper, and that the sale was made without the consent of such majority, why would not the act of the General Assembly of 31st December, 1852, confirming the sale, cure this irregularity?   For what cause, or upon what principle can this act be declared void and inoperative?   Its expediency we have no right to question.   It must be presumed that the Legislature were satisfied that the sale was a fair one, and for the benefit of the inhabitants of the township, or they would not have passed a solemn act confirming it.   We must examine the matter, therefore, as a question of power, and not of expediency.

The act of Congress of March 3d, 1843, declares that the school lands shall in no wise be sold without the *consent of the inhabitants* of the township, etc., *to be obtained in such manner as the Legislature shall by law direct.*

If this act of Congress is imperative upon the State, and if a sixteenth section cannot be legally sold without a compliance with its provisions, it follows that the sale made in this case was irregular, and that the act of the Legislature affirming it is nugatory.

But we think that by the act of Congress of June 23d, 1836, supplemental to the act for the admission of Arkansas into the Union, and by the ordinance passed by the General Assembly, 18th October, 1836, accepting the provisions of the supplemental act, the legal title to the land in question was granted to, and vested absolutely· in the State.   The State accepted the grant, however, charged with the trust, that the land was to be

appropriated to the use of the inhabitants of the township in which it was situated, for the use of schools. The State, as a sovereign, not as an individual, took upon herself a trust, which she was to execute, and could only execute, by such municipal legislation as her General Assembly might deem necessary and expedient to carry into practical effect the objects of the grant. The land was to be appropriated to the support of schools for the benefit of the inhabitants of the township in which it was situated, but whether this was to be effected by leasing the land, or selling it, and putting the proceeds upon interest, was not prescribed by the act of Congress making the grant, and of course was left to the discretion and good faith of the State. It follows that the title to the land having vested absolutely in the State, by virtue of the act of 23d June, 1836, Congress had not the power to legislate further upon the subject, and therefore the act of 3d March, 1843, was not binding upon the State. See *Long et al. vs. Brown et al.*, 4 *Ala.* 622; *Payne vs. St. Louis Co.*, 8 *Mo.* 473; *Maupin vs. Parker*, 3 *Ib.* 310; *Bradley vs. Case*, 3 *Scam.* 585; *Dunklin Co. vs. District County Court, etc.*, 23 *Mo.* 449.

We think, therefore, that the act of the General Assembly confirming the sale in this case was valid and effectual; and that the decree of the Court below, dismissing the bill for want of equity, must be affirmed.