SPECIAL SCHOOL DISTRICT No. 5 *v.* STATE.

Opinion delivered June 23, 1919.

1.  SCHOOL LANDS—PURPOSE OF GRANT OF CONGRESS.—Act of Congress of June 23, 1836, provided that section 16 in every township "shall be granted to the State for the use of the inhabitants of such townships for the use of schools." By ordinance of the Legislature approved October 16, 1836, the State accepted the above grant. By act of Congress of February 15, 1843, Congress conferred upon the State the power to invest the money arising from sales of such land in some productive fund to be applied to the use of schools within the several townships for which they were originally set apart. By act of the Legislature of 1885 it was provided that "the principal arising from the sale of the 16th section of land shall never be apportioned or used." *Held* that the two last-mentioned acts were declaratory of the meaning of the two earlier acts, and correctly construe the meaning of the original act of Congress.

2.  SAME—VALIDITY OF ACT AUTHORIZING SALE.—Act 465 of 1919, providing that certain 16th section lands should be sold and the proceeds invested in a high-school building, is void as authorizing a breach of the trust assumed by the State in accepting the grant of Congress of June 23, 1836.

3. SAME—ACCEPTANCE OF GRANT—TRUST.—By accepting the grant of Congress of June 23, 1836, the State pledged her faith to hold the land or its proceeds for the benefit of all the inhabitants of the township, and an act which provides that the funds may be invested for the benefit of a portion of such inhabitants is void.

Appeal from Mississippi Chancery Court, Chickasawba District; *Archer Wheatley,* Chancellor; affirmed.

STATEMENT OF FACTS.

Act 465 of the Acts of 1919, passed on the 28th of March, 1919, provided "that the school district of Special School District No. 5 of Mississippi County, Arkansas, be authorized to sell and convey by warranty deed a fee simple title to the SE¼ and E½ of the SW¼ of section 16, township 15 north, range 11 east, Mississippi County, Arkansas, and to reinvest the money obtained from such sale. Section 2 of the act provided: "That the lands may be disposed of by the directors after four weeks' advertisement in the paper or papers published in Blytheville, Arkansas, for a general circulation in Mississippi County, Arkansas; that the directors may dispose of the lands described in such small divisions and at public auction or private sale as they deem advisable in order to secure the best price." Section 3 provided: "That the funds derived from sale of the lands shall be reinvested in a building and equipment to be constructed in Blytheville, Mississippi County, Arkansas, and used for high school purposes." Section 4 provided: "That the building so constructed shall be for the benefit of children living in school districts numbers 33, 42, 49 and Special School District No. 5, who may attend the school without paying tuition."

Pursuant to the authority of the act, the directors caused to be published in the *Herald-News,* a newspaper published in the city of Blytheville having a general circulation in Mississippi County, Arkansas, a notice of sale of the lands above described.

This suit was instituted in the name of the State for the use and benefit of the common school fund and by school districts numbers 27 and 33 and by J. B. Fields,

a taxpayer of School District No. 27, and Herman Cross, a taxpayer of School District No. 5 of Mississippi County, in their individual capacities against Special School District No. 5 of Mississippi County, Arkansas, and the directors of such district.

The plaintiffs in their complaint set up the above act and alleged that it was void, among other things, for the reason that it violated the act of Congress granting the land in section 16 in each township of the State. They alleged that the act of Congress granting the 16th section of lands to the State created a trust, the revenue or proceeds only from which could be used for the support of schools; that the act was a discrimination against certain of the inhabitants of the township in which the lands are located; that the act does not provide any manner for obtaining the consent of the inhabitants of such township; that the act is an attempt to take the proceeds from the sale of school lands and invest in buildings for which no sites are provided, and for obtaining which no provision is made.

The answer denied all the material allegations of the complaint as to the invalidity of the act and alleged that the defendants did advertise and their purpose was to proceed to sell the land in pursuance of the terms of the act and to reinvest the proceeds in accordance with its terms.

The court found that Act 465 was unconstitutional and void "in that it is violative of the trust imposed by the Congress upon sixteenth section lands at the time said lands were granted to the State of Arkansas, for the use of the inhabitants of the several townships for the use of the schools, in that the investment of the proceeds of the land, as outlined in the act, would be a discrimination against the inhabitants of township 15 north, range 11 east, who do not live within the boundaries of School Districts Nos. 33, 42, 49 and Special School District No. 5 of Mississippi County."

The court thereupon entered a decree perpetually enjoining the defendants, as directors of Special School

District No. 5, from selling the lands and their attempting to carry out the purposes of the act. From that decree is this appeal.

*Davis, Costen & Harrison,* for appellant.

Act No. 465, Acts of 1919, is not unconstitutional and void, nor violative of the trust imposed upon the State in the act of Congress granting the sixteenth section lands to the State for school purposes, etc.

The act of Congress is not binding upon the State, and it is not necessary to obtain the consent of the inhabitants to such a sale as this. 19 Ark. 308; 11 *Id.* 332. One acting under authority granted by statute has, in addition to the authority expressly granted, that necessarily implied and essential to carry out the power granted. 36 Cyc. 1112; 111 Ark. 332 (335). An executory trust was created by the act of Congress, but the object and intent was to be carried into effect in a manner at the sound discretion of the trustee. 39 Cyc. 195. The State derived no more power from the act of Congress of February 15, 1843, than it already had to sell its lands. 15 U. S. (Lawy. ed.) 338-341. The State can sell the sixteenth section lands without permission of Congress. *Ib.* 558. Only on the theory that the trust is an executory one could the State have authorized the sale of these school lands as she has done. See 19 Ark. 308; 49 *Id.* 174; 50 *Id.* 346; 111 *Id.* 333.

The act is not a discrimination against the inhabitants of the township who do not live in School Districts 33, 42, 49 and Special District No. 5. The manner of carrying out the trust is left to the State, and it has determined that a high school building would be for the benefit of the inhabitants of the township under the terms and conditions of the act, and that is conclusive, conceding that the act was a discrimination, yet the unconstitutional parts of the act may be eliminated and the constitutional sections may stand. 37 Ark. 356; 46 *Id.* 312; 92 *Id.* 93.

*John D. Arbuckle,* Attorney General, and *Robert C. Knox,* Assistant, for appellee.

1.   The lands were granted for the *use* of the townships for schools, and the *"use"* means that the trust shall be carried out by using the incomes for the maintenance of schools and cannot be determined and destroyed by the Legislature selling the lands at any time it sees fit.   Funk & Wag. New St. Dict., 2626; 39 Cyc. 845.   For definitions of "use" see, also, 152 Ind. 111; 52 N. E. 599; 6 Misc. (N. Y.) 524; 27 N. Y. Sup. 879; 62 Conn. 62; 16 L. R. A. 461; 34 Me. 394; 81 Conn. 372.

The act is clearly invalid.   120 Ark. 80; 96 N. W. 310.

The act is also discriminatory, and violates a doctrine of uniformity in the disbursements of the school funds. 120 Ark. 80, deprives those inhabitants.

2.   See Pomeroy, Equity, § 982.

3.   The fact that the trust is executory does not authorize the trustee to destroy it.   39 Cyc. 195.

4.   The act, by its own terms, is nugatory, and no portion of it can stand.   Const. 1874, Art. 14, § 2.

*P. A. Lasley, R. A. Nelson* and *C. A. Cunningham,* also of counsel, for appellee, join in appellee's brief.

WOOD, J., (after stating the facts).   The lands in suit are part of section 16, township 15 north, range 11 east, immediately south of and adjacent to the town of Blytheville, which were granted to the State of Arkansas by the act of Congress, approved June 23, 1836, supplementary to the act for the admission of the State of Arkansas into the Union.

The act provided: "That the section numbering 16 in every township, and when such section has been sold or otherwise disposed of, other lands equivalent thereto, or as contiguous as may be, shall be granted to the State, for the use of the inhabitants of such townships for the use of schools."

By an ordinance of the Legislature approved October 18, 1836, the General Assembly of the State of Arkansas "freely accepted, ratified, and irrevocably con-

firmed as articles of compact and union between the State of Arkansas and the United States'' the act of Congress containing the above grant of lands.

The language of the act of Congress, to-wit: ''For the use of the inhabitants of such townships for the use of schools,'' shows clearly that the purpose of the grant was to convey to the State absolute title to the sixteenth section in every township to be held in trust for the benefit of the inhabitants of the townships in which such sections are situated for the use of the schools.

The act of Congress of February 15, 1843, conferred upon certain States, among them Arkansas, the right to provide for the sale of lands reserved and appropriated by Congress for the use of schools within those States ''and to invest the money arising from sales thereof in some productive fund, the proceeds of which shall be forever applied under the direction of said Legislature to the use and support of schools within the several townships and districts of the county for which they were originally reserved and set apart, and for no other purpose whatever.''

There is also other language in the act of 1843 showing that Congress interpreted the language of the original grant in the act of 1836 to mean that the money arising from the sale of the sixteenth section should be invested in some productive fund for the use and support of the schools within the townships where the sixteenth sections are situated.

While the act of Congress of 1843, *supra,* was declared by this court, in *Mayers* v. *Byrne,* 19 Ark. 308, not binding upon the State as to the disposition of the land, the act nevertheless is a construction by Congress of the meaning of the terms of the original grant as to how the money derived from the sale of the sixteenth sections should be used by the State to which such lands were granted.

The Legislature as early as 1853 provided that the accruing annual interest on the money arising from the sale of the sixteenth section of land in any township

shall be a perpetual fund to be appropriated to the support of a school or schools in the respective townships, but no part of the principal shall ever be expended for any purpose whatever and shall be loaned out at an interest of not less than 8 per cent. per annum." Act of January 11, 1853.

Section 2 of the act of 1885, section 7488 of Kirby's Digest, provides as follows: "The principal arising from the sale of the sixteenth section of land shall never be apportioned or used."

While the later interpretation by Congress and by the Legislature of the meaning of the terms of the act contained in the original grant are not binding on the court, they are persuasive, and indeed we are convinced that they correctly construe the meaning and purpose of the original act of Congress of 1836, and the ordinance of the State accepting the grant.

Now, the word "use" employed in the act of Congress has a well-defined legal meaning, and the State by its ordinance accepting the terms of the grant of the United States entered into the compact and accepted the trust imposed thereby which her sovereign power, the Legislature, must observe in executing the trust.

"As a general rule," says the Supreme Court of Indiana, "the use of a thing does not mean the thing itself, but means that the user is to enjoy, hold, occupy, or have in some manner the benefit thereof. If the thing to be used is in the form or shape of real estate, the use thereof is its occupancy or cultivation, etc., or the rent which can be obtained for its use. If it is money or its equivalent, generally speaking, it is the interest which it will earn." *Brunson* v. *Martin,* 152 Ind. 111-118; *Lin* v. *Howard,* 163 Mich. 556, 128 N. W. 793-5; *In re Moor's Estate,* 163 Mich. 353, 128 N. W. 198; *Candee* v. *Conn. Savings Bank,* 81 Conn. 372-74.

It will be observed that the act of Congress granted the sixteenth section to the State absolutely and unreservedly and without prescribing the manner in which the lands should be used if retained by the State, or, if

sold, how the proceeds should be invested or put to use. In these respects the power of the Legislature is plenary. It is wholly within the province of the Legislature to determine whether the lands shall be leased or whether they shall be sold or how and by whom they shall be managed and sold. *Widner* v. *State,* 49 Ark. 172; *School Dist. No. 36* v. *Gladish,* 111 Ark. 329.

As is said in *Mayer* v. *Byrne,* 19 Ark. 308-18: "The State, as a sovereign, not as an individual, took upon herself a trust, which she was to execute, and could only execute, by such municipal legislation as her General Assembly might deem necessary and expedient to carry into practical effect the objects of the grant. The land was to be appropriated to the support of schools for the benefit of the inhabitants of the township in which it was situated, but whether this was to be effected by leasing the land, or selling it, and putting the proceeds upon interest, was not prescribed by the act of Congress making the grant, and, of course, was left to the discretion and good faith of the State."

But there is a limitation upon the power of the Legislature to dispose of the *corpus* of the trust; that is, the land itself, or, if sold, the proceeds thereof, in a manner which would defeat the trust by appropriating the land or the proceeds thereof to a purpose contrary to that expressed in the compact. The State is under a sacred obligation to carry out the purpose of the grant as clearly expressed in the act of Congress.

We conclude, therefore, that the words "for the use of the inhabitants of such township for the use of schools" contained in the grant of Congress limit the State in her execution of the trust, through her sovereign agent, the Legislature, to the purposes indicated by the meaning of the word "use." This word has a potential significance and shows that the parties to the compact never intended that the sixteenth section, the land itself, or the proceeds thereof, if sold, should be turned over to the inhabitants of the township, the beneficiaries of the trust, but, on the contrary, that the lands or its

proceeds should be put to use for the maintenance and support of schools.

The act under review provides that the funds derived from the sale of the sixteenth section shall be reinvested in a building and equipment in Blytheville, to be used for high school purposes. By the act in question the property itself, or the *corpus* of the trust, is exhausted and used in a building for the benefit of students living in School Districts Nos. 33, 42, 49 and Special School District No. 5. The act thus violates the plain terms of the contract or compact between the United States Government and the State as evidenced by the act of Congress of 1836 containing the grant, and the ordinance of the State accepting the same, and is, therefore, void. Article 2, section 22, Constitution of 1874.

But, even if the compact contemplated that the *corpus* of the trust might be appropriated for high school buildings, etc., the act under consideration is further void because it is discriminatory against part of the inhabitants of the township in which the sixteenth section is situated, which violates the terms of the compact. The plain language of the act of Congress "for the use of the inhabitants of such township" refers to all the inhabitants of such township. The grant of land "for the use of the inhabitants of the township" created a vested right in the usufruct of the sixteenth section in all the inhabitants of the township in which that section is situated.

It is shown by a stipulation in the record that School Districts Nos. 4, 6, 22, 32 are partially within township 15, in which the sixteenth section is situated.

Section 4 of the act of the Legislature under consideration provides "that the building so constructed shall be for the benefit of students living in School Districts Nos. 33, 42, 49 and Special School District No. 5, who may attend the school without paying tuition.

All the inhabitants of township 15 have a usufructuary proprietorship of the sixteenth section. This is really the more important estate than the naked legal

title which the State has pledged her good faith to hold for the benefit of all the inhabitants of the township and to be administered uniformly and impartially to the benefit of all. Any act which could have the effect of depriving any of the inhabitants of the benefit of the use of the lands or the proceeds thereof for the use of schools would violate the provisions of the compact and would be a taking of their property without compensation.

In *Dickinson* v. *Edmonson*, 120 Ark. 80, speaking of the disbursement of the common school fund, we said: "The Legislature had no authority to select an arbitrary basis for the disbursement of the funds, but must do so upon some just basis relating either to the scholastic population or the general population of each locality or the amount of taxes paid, or some such equal and uniform basis of distribution. The Constitution expressly provides for uniformity of taxation, but there is no express provision with respect to the uniformity of disbursement. However, in the very nature of the subject, there must be uniformity, otherwise the use of the fund would not be for the common benefit of the people. * * * The common school funds cannot be distributed in a partial manner so as to discriminate between different localities." The above doctrine is applicable here.

The funds derived from the use of the sixteenth section or from the use of the proceeds of the sale of such section, were manifestly intended by the grant from the United States Government, to be used for the benefit of the inhabitants; that is, all the inhabitants, for the support and maintenance of schools without discrimination against any inhabitants of any class or locality. Therefore, the decree of the chancery court declaring the act under review void and perpetually enjoining the directors of Special School District No. 5 from selling the land is correct, and it is affirmed.

McCULLOCH, C. J., not participating.