SLOAN v. BLYTHEVILLE SPECIAL SCHOOL DISTRICT No. 5.

## Opinion delivered June 22, 1925.

1. COURTS—CONSTRUCTION OF OPINIONS.—The language used in any opinion of the court must be construed as a whole, and read in the light of issues presented.

2. SCHOOLS—GRANT OF SIXTEENTH SECTION.—The effect of the grant to the State by Congress of the sixteenth sections of land for the benefit of the inhabitants of the congressional township for school purposes was to vest the legal title to such lands absolutely in the State without limitation of its power to dispose of the lands, though there is a sacred obligation imposed on the good faith of the State to use the lands for the benefit of the public schools.

3. SCHOOLS—DISTRIBUTION OF FUNDS FROM SALE OF SCHOOL LANDS.—Acts 1899, No. 159, § 1 (Crawford & Moses' Dig., § 9285) and Acts 1919, No. 344, § 5 (Crawford & Moses' Dig., § 9108), directing that the funds arising from the sale of the sixteenth section school lands be credited to the permanent school fund of the State, rather than to the fund of the school district in which the sixteenth section is situated, held constitutional.

Appeal from Pulaski Chancery Court; *John E. Martineau*, Chancellor; reversed.

### STATEMENT OF FACTS.

Appellees brought this suit in equity against appellant to restrain him as treasurer of the State of Arkansas from placing certain money derived from the sale of sixteenth section school lands to the credit of the permanent school funds of the State of Arkansas. The answer admitted the allegations of the complaint that certain sixteenth section school lands in Mississippi County, Arkansas, were sold by order of the county court, and the proceeds thereof are now in the hands of the sheriff of Mississippi County, for payment into the treasury of the State of Arkansas, and that the State Treasurer declines to receive said funds as State Treasurer for any purpose other than as a credit to the permanent school funds as provided by section one of Act 159, approved May 18, 1899, and appearing in Crawford & Moses' Digest as § 9285, and § 5 of act

344, approved March 22, 1919, and appearing in Crawford & Moses' Digest as § 9108.

The appellant denies that the act of Congress approved March 8, 1898, and the acts of the Legislature above referred to are unconstitutional. In this connection it may be stated that they authorized and directed the credit of funds arising from the sale of sixteenth section school lands to the permanent school funds of the State.

Appellees filed a demurrer to the answer of the appellant, which was sustained by the chancery court. Appellant declined to plead further and elected to stand upon his answer. It was therefore decreed that appellant be enjoined from crediting to the permanent school funds of the State the proceeds of the sale of the sixteenth section school lands in question, and appellant was ordered and directed to credit said funds to the inhabitants of the special school districts in which the lands sold were situated. The case is here on appeal.

*H. W. Applegate,* Attorney General, *Brooks Hays,* Assistant, and *Utley & Hammock,* for appellant.

*Little, Buck & Lasley,* for appellee.

HART, J., (after stating the facts). The sole question raised by the appeal is whether the funds derived from the sale of sixteenth section school lands under the statute should be credited to the inhabitants of the school district in which the land is situated as provided by the earlier act.

The contention of appellees, who were the plaintiffs in the court below, is that the statute providing that the proceeds arising from the sale of sixteenth section lands shall be a part of the permanent school funds of the State is invalid because inconsistent with the act of Congress granting the school lands to the State of Arkansas and the act of the State accepting the grant. In short, it is the contention of appellees that this compact created a trust in favor of the inhabitants of the school district in which the sixteenth section lands are situated

which could not be abrogated by an act of the Legislature, or by an act of Congress.

Since *Cooper* v. *Roberts,* 18 How. (U. S.) 173, and *Mayers* v. *Byrne,* 19 Ark. 308, contain a complete history of sixteenth section school lands, their legal status, and the beneficent motive that caused said lands to be devoted to educational purposes, we need not repeat these matters here. While the precise question raised by this appeal was not decided, the effect of those cases is to hold that under the compact between the United States and the State of Arkansas there was a grant to the State directly of these lands without any limitation of its power, and that no application to Congress was necessary to direct the appropriation of their proceeds. It will be noted that, under the original compact, the section numbered sixteen in every township was granted to the State for the use of the inhabitants of such township for the use of schools.

It is true that the Legislature memorialized Congress to allow it to change the funds to the credit of the general school funds of the State, and that such permission was given by the act of Congress of March 8, 1898, which resulted in the passage of the act of the Legislature approved May 18, 1899.

As stated by the Supreme Court of the United States in the case last cited, the consent of Congress was not necessary, and the application for it was but evidence of the strong desire of the Legislature to act in good faith and to keep within the pale of the law.

In *Mayers* v. *Byrne,* 19 Ark. 308, the sale of a sixteenth section was sought to be set aside on the ground of fraud and illegality in the sale, and the court sustained the sale under an act of the Legislature confirming it. Upon appeal, it was held that the act of the General Assembly confirming the sale was valid and effectual, and that the decree of the court below dismissing the bill for want of equity must be affirmed. The court held that the title to the land vested absolutely in the State under

the compact between the United States and the State. In discussing the question, Chief Justice English said: "The State accepted the grant, however, charged with the trust, that the land was to be appropriated to the use of the inhabitants of the township in which it was situated, for the use of schools. The State, as a sovereign, not as an individual, took upon herself a trust, which she was to execute, and could only execute, by such municipal legislation as her General Assembly might deem necessary and expedient to carry into practical effect the objects of the grant. The land was to be appropriated to the support of schools for the benefit of the inhabitants of the township in which it was to be situated, but whether this was to be effected by leasing the land, or selling it, and putting the proceeds upon interest, was not prescribed by the act of Congress making the grant, and of course was left to the discretion and good faith of the State."

Again in *Widner v. State,* 49 Ark. 172, it was held that the legal title to said lands is in the State, and that it is held in trust for the support of schools for the inhabitants of the township in which it is situated. There the right of the State to sue a trespasser on school lands for the injury complained of was upheld.

In *State* v. *Burke,* 63 Ark. 56, it was held that the statute of limitations could not be pleaded against an action by the State to foreclose a mortgage given to secure a loan of money belonging to the sixteenth section school funds, and held by the State in trust for the use of schools. In discussing the question the court said that it was held in *Mayers* v. *Byrne,* 19 Ark. 308, that the effect of the act of Congress and the acceptance of the proposition therein contained was to vest the title to the sixteenth sections therein granted absolutely in the State, and that the State as a sovereign and not as an individual took upon herself a trust which she could only execute by such legislation as her Legislature might enact to carry into practical effect the object of the grant.

In discussing the question the court said: "While the State has always recognized the inhabitants of each township as the beneficiaries of the grant of the sixteenth sections in their township, it has never abandoned the trust it assumed, but has always made and treated the individuals or corporations placed in control of the same as component parts of a general system of education, and at the same time as instruments in its hands for the performance of that trust."

Again in *School District No. 36* v. *Gladish,* 111 Ark. 329, the court expressly recognized that, while the effect of our earlier decisions was to hold that the State held the legal title to the sixteenth sections in trust for the support of schools for the inhabitants of the township in which the land was situated, it was for the Legislature to determine how and by whom these lands shall be managed and sold, and how the trust should be executed.

In *Special School Dist. No. 5* v. *State,* 139 Ark. 263, the court again quoted with approval from *Mayers* v. *Byrne,* 19 Ark. 308, to the effect that the State as a sovereign, and not as an individual, took upon herself a trust which she was to execute and could only execute by such legislation as her General Assembly might deem necessary, and expedient to carry into practical effect the objects of the grant. It was there held that the funds derived from the sale of sixteenth section school lands could not be reinvested in a building and equipment to be used for high school purposes.

In *Brooks* v. *Wilson,* 165 Ark. 477, it was held that while the trust created by the compact between the United States and this State that sixteenth section lands should be used for school purposes is a sacred obligation imposed on the good faith of the State, the obligation is honorary, and that the legal title to such lands being vested in the State, its power over the same is plenary and exclusive. In that case an inhabitant of the school district brought suit against the sheriff to enjoin him from issuing a certificate of purchase of sixteenth

section school lands situated within the limits of said school district. The chancellor dismissed the complaint for want of equity, and the decree was affirmed.

While the question raised by this appeal was expressly reserved from decision, it is manifest from the reasoning of the court and the cases cited that the court held that the legal title to said lands was intended to be vested in the State, and was so vested by the acceptance of the conditions by the Constitutional Convention under which the State was admitted into the Union.

The language used in any decision must be construed as a whole and read in the light of the issues presented. It is manifest from all these decisions that the trust reposed by the United States is in the State of Arkansas; that it is in the nature of a personal trust in the public faith of the State, and not a property trust fastened by the terms of the grant upon the land itself. The effect of all our decisions is that the grant by Congress was to the State directly of these lands, without any limitation of its power, and that no application to Congress was necessary to direct the appropriation of their proceeds.

This holding is in conformity with the rule adopted by the Supreme Court of the United States. In discussing a similar compact between the United States and the State of Michigan in *Cooper* v. *Roberts*, 18 How. (U. S.) 173, the court said: "The trusts created by these compacts relate to a subject certainly of universal interest, but of municipal concern, over which the power of the State is plenary and exclusive. In the present instance, the grant is to the State directly, without limitation of its power, though there is a sacred obligation imposed on its public faith. We think it was competent for Michigan to sell the school reservations without the consent of Congress.

Again in the *State of Alabama* v. *Schmidt*, 232 U. S. 168, the court held that the act under which Alabama became a State vested the legal title of section sixteen

of every township in the State absolutely, although the statute declared that it was for the use of schools. It was held further that, while the trust created by a compact between the States and the United States that section sixteen be used for school purposes is a sacred obligation imposed on the good faith of the State, the obligation is honorary, and the power of the State, where the legal title has been invested in it, is plenary and exclusive.

In *King County* v. *Seattle School District No. 1, 263 U. S. 361*, the court had under consideration an act of Congress directing that a certain per cent. of all money from each forest reserve shall be paid to the State in which the reserve is situated to be expended as the State Legislature may prescribe for the benefit of the public schools and public roads of the county or counties in which the forest reserve is situated, and held that the act does not create a trust, although a sacred obligation is imposed on the public faith of the State. The decision expressly recognized that there is no limitation upon the power of the Legislature to prescribe how the expenditures shall be made for the purposes stated.

A similar construction has been placed upon the act of Congress granting to the State of Arkansas certain swamp and overflowed lands to construct necessary levees and drains to reclaim such lands. *Branch* v. *Mitchell*, 24 Ark. 431; *Hagar* v. *Reclamation District No. 108*, 111 U. S. 701; and *United States* v. *Louisiana*, 127 U. S. 182. See also *Board of Supervisors of Whiteside County* v. *Burchell* 31 Ill. p. 68, *Dunklin County* v. *District County Court* 23 Mo. 449; and *Gaston* v. *Scott*, 5 Ore. 48.

The necessary result of all these decisions arising in various ways is to hold that the nature of the trust raised by the compact between the United States and the States in cases of this sort is a mere personal trust, and that its execution is a matter exclusively within the

control of the Legislature. They hold that the trust is not fastened to the land and does not run with it.

Of course, while the power of the Legislature to deal with the land is not affected by the compact, it would be affected by any constitutional limitation of the State. Article 14 of our Constitution provides for the establishment and maintenance of common schools in this State and their support by taxation. The supervision of public schools and the execution of the laws regulating the same is vested in and confided to such officers as may be provided by the General Assembly.

Section 2 provides that no money or property belonging to the public school fund, or to this State for the benefit of schools or universities, shall ever be used for any other than for the respective purposes to which it belongs.

As we have already seen, this court and the Supreme Court of the United States have uniformly held that the title to these sixteenth section lands is vested absolutely in the States, and that the Legislature has exclusive control over the funds. The provision of the Constitution just referred to is mandatory in its nature and would prevent the Legislature from using the proceeds from these school lands for any other purpose than the support of the common schools. The language of the Constitution, however, does not limit the funds to the use of the particular district in which the sixteenth section lands are situated. The only restriction in the Constitution is that the money shall never be used for any other than school purposes. This was the dominant purpose guiding the court in the decision of *Special School District No. 5* v. *State,* 139 Ark. 263.

While that decision does state that the State is under a sacred obligation to carry out the purposes of the grant, expressed in the act of Congress, yet, it clearly recognizes that the trust is a personal one; and that the manner of its execution is exclusively within the power of the Legislature. In short, it recognizes that the manner of the execution of the trust is a matter

of public policy of the State, which can only be exercised by the Legislature, and which is a question that does not at all address itself to the courts.

The result of our views is that the grant of the sixteenth section lands submitted to the State by the act of Congress and accepted by the State was of the fee to the lands without limitation upon the power of the State. It is true that the grant imposed a trust which was accepted by the State; but the trust was of a personal nature and to be exercised by the State as a sovereign and was not a trust fixed upon the land itself and running with it.

Reliance is placed by counsel for appellees upon the case of the *State of Indiana* v. *Springfield Township in Franklin County*, 6 Ind. p. 83, but we think the trend of that decision is contrary to the reasoning of our own cases, and those of the Supreme Court of the United States cited above, and its reasoning does not appeal to our minds.

It follows that the decree of the chancellor will be reversed, and the cause will be remanded with directions to dismiss the complaint for want of equity.

SMITH, J., dissents.