F. G. OXLEY STAVE COMPANY *et al.* v. BUTLER COUNTY *et al.*, Appellants.

Division Two, May 8, 1894.

1. **Judgment, Vacation of:** FRAUD: EQUITY. The fraud for which a court of equity will vacate a judgment is in its procurement.

2. ——: ——: ——. Where the cause of action was vitiated by fraud, the latter must be interposed as a defense, and, unless such interposition was prevented by fraud, it can not be asserted against the judgment.

3. ——: ——: ——. A judgment will not, after the lapse of twenty years, be vacated, for fraud in obtaining it, on the loose recollection and uncertain memory of witnesses.

4. **Judgment:** ESTOPPEL. A judgment operates as an estoppel only against parties and privies.

5. **Deed of Trust, Action to Annul:** PARTIES. Bondholders are not necessary parties to set aside a deed of trust given to secure their bonds where their trustees are made defendants.

6. **Several Trustees:** DEATH OF CO-TRUSTEE: SURVIVORSHIP OF TRUST. Where one or more of several trustees dies, the trust at common law continues in the survivor or survivors and this rule is unaffected by the statute of this state abolishing joint tenancies in certain cases. (Gen. Stat. 1865, p. 443, sec. 12.)

7. **Suit:** WRIT, STRANGERS TO. No one but a party to a suit will be permitted to interfere with its management and so no one but a party to a writ and who is liable to be injured by it can complain of any irregularity affecting it.

8. **Voluntary and Express Trusts:** ACCEPTANCE BY TRUSTEE. No title in case of voluntary or express trusts vests in the proposed trustee by whatever instrument it is created, unless he expressly or by implication accepts the office, or in some way assumes its duties and liabilities.

9. **Corporation, Dissolution of.** The mere insolvency of a corporation, the sale of the major portion of its assets and its inability to carry out the purposes of the incorporation do not necessarily work its dissolution.

10. **Judgment, Vacation of:** PARTIES: LACHES. Purchasers on foreclosure of a deed of trust, executed by a railroad company on swamp lands patented to it by the state pursuant to a county subscription to the capital stock of the company, sought to set aside, twenty years thereafter, a judgment procured at the suit of the county vacating the state's patent and the deed of trust so given by the company on its lands to secure its bonds. *Held*, reversing the trial court, (1) that the evidence was insufficient to set aside the decree in favor of the county on the ground of fraud and (2) that said decree should not be annulled under the circumstances of the case on the grounds that it was rendered against two of the trustees after their death or against a dissolved corporation.

*Appeal from St. Louis Circuit Court.*

REVERSED AND REMANDED.

*H. S. Priest* and *M. L. Clardy* for appellants.

(1) The two orders of the county and district courts of Butler county purporting to subscribe to the capital stock of the Cairo & Fulton Railroad Company are dated October 24, 1854, and December 6, 1855,

respectively.   These subscriptions were, therefore, not made under the acts of December 7, and December 10, 1855, or either of them.   (2)   The only statute relating to the subject of subscriptions by counties to the capital stock of railroads and the transfer of swamp lands in payment of such subscriptions in force on the twenty-sixth day of October, 1854, and on the sixth day of December, 1855, was that of February 24, 1853 (Session Acts 1852-53, p. 121), and unless the requirements of that act were observed, the railroad company acquired no title to such lands.   The twenty-ninth section vested in counties the authority to subscribe to the capital stock of railroad companies and provided that the counties "may for information cause an election to be held to ascertain the sense of the taxpayers, etc."   It would seem hardly necessary to cite authorities to show that "may" here used is equivalent to "must" or "shall" and is therefore imperative.   A power is given to public officers and concerns the public interest and the rights of third persons who have a claim *de jure* that the power shall be exercised in a certain manner for the sake of justice and the public good.   *State ex rel. v. Laughlin,* 73 Mo. 449; *Leavenworth v. County Court,* 42 Mo. 171; *Newburg Turnpike Co. v. Miller,* 5 Johns. Ch., p. 113.   An election at which a majority of the taxpayers of the county voted in favor of subscribing to the stock of the railroad company was a condition precedent to the transfer of the lands.   (3)   The county court of Butler county was not the general agent of the county; its powers were defined by law.   The act of February 24, 1853, so far as the disposition of swamp lands was concerned, constituted its warrant of attorney.   It had no power respecting the swamp lands not given to it by that act. "So long as the county court continues to tread in the narrow pathway allotted to its feet by legal enactment,

its acts are valid, but whenever it steps beyond, its acts are void." *Saline County v. Wilson*, 61 Mo. 239; *Sturgeon v. Hampton*, 88 Mo. 213; *Bauer v. Franklin Co.*, 51 Mo. 205; *Steines v. Franklin County*, 48 Mo. 167. (4) The order of the county court July 24, 1854, directing the clerk "to open columns on the poll books for the purpose of taking the vote of the people for and against the county taking stock, etc.," and the order of the county court, October 24, 1854, reciting that: "It appearing to the satisfaction of the court that qualified voters of said county are in favor of subscribing $50,000 to the Cairo & Fulton Railroad, etc.," do not show that the county court "caused an election to be held to ascertain the sense of the taxpayers," as to such subscription. No election was directed. The record does not show that an election was held or that any return of the vote cast was ever made to any officer or body, authorized to declare or decide the result, and these facts should appear in the record. *St. Louis v. Alexander*, 23 Mo. 483; *Carpenter v. The Inhabitants*, 51 Mo. 481; *State ex rel. v. County Court*, 45 Mo. 242. It does not show that a majority of the taxpayers of the county voted or even had an opportunity to vote on a proposition to subscribe to the stock of the railroad company. *State ex rel. v. Garroutte*, 67 Mo. 445. (5) So far as the subscription made by the district county court, December 6, 1855, "on motion and upon a satisfactory showing that the citizens of the county are in favor of the same," is concerned, it will not be seriously contended that the act of February 24, 1853, requiring an election to be held "to ascertain the sense of the taxpayers as to such subscription" was complied with; and yet this statute was the only one in existence that authorized the court to make any disposition of the swamp lands. (6) The order of the district county court, December 6, 1855,

referring to the order of the county court of October 24, 1854, and providing that swamp land should be transferred to the railroad company in satisfaction of the subscription of $50,000, was made without the authority of law, and was, therefore, void. Section 32 of the act of 1853 only authorized a county which had already subscribed for railroad stock under section 29 of the same act—that is, after the taxpayers had authorized such subscription—to sell or mortgage its overflowed or swamp lands to pay its subscription. It devolves on the persons claiming the benefit of the subscription to show that the authority to make it had been conferred by an election. *Carpenter v. Inhabitants, supra; Steines v. Franklin Co.*, 48 Mo. 167. (7) Persons dealing with county courts when acting ministerially are bound to take notice of the powers and authority of such courts. *State v. Bank*, 45 Mo. 538; *Andrew County v. Craig*, 32 Mo. 531; *Sturgeon v. Hampton, supra*. One who buys swamp land is presumed to know, as a matter of public record, the agent's authority. *Dart v. Hercules*, 57 Ill. 446. (8) The appellants can not be affected by the decree in the case of *Chouteau v. Allen*, offered in evidence. They were not parties nor were any persons under whom any of them claim, parties to the proceeding in which that decree was rendered, neither were the questions presented by appellants in this case passed upon by the court in that case. (9) The questions in issue in this case were passed on in the case of *Butler Co. v. Railroad*, and Moore, Wilson and Waterman, trustees in the deeds of trust made to secure the payment of the bonds by the company. The death of two of the trustees before the decree was rendered did not vitiate or in any way affect it. The trustees were joint tenants and upon the death of two of them the remaining one took the whole trust estate by survivorship.

*Stewart v. Pettus*, 10 Mo. 468; Lewin on Trustees, p. 50. (10) The decree was rendered in July, 1869, more than twenty years before the bill, in which no reason or excuse is alleged for not instituting the suit before, was filed, and it can not be attacked now. *Heffernan v. Howell*, 90 Mo. 444. (11) The surviving trustee, Wilson, was the only necessary party to the suit. Broman and Bedford acquired no title by virtue of their appointment as trustee. The title could not be conveyed, except by deed. *Bumgarner v. Cogswell*, 49 Mo. 259. (12) Since this decree was rendered, thousands of acres of these lands have been bought of Butler county in small tracts by purchasers in good faith who have built houses and made homes on them, not suspecting that their title would ever be challenged.

*G. A. Madill* and *Lionberger & Shepley* and *E. R. Lentz* and *J. W. Warrington* for respondents.

(1) Notwithstanding the purpose for which the lands were granted to Missouri by the act of congress, the state was at liberty to make such disposition of them as it might deem proper. *Dunklin County v. Dunk. Co. Ct.*, 23 Mo. 449; *Pool v. Brown*, 98 Mo. 675; *Mills County v. Railroad*, 107 U. S. 557. (2) The acts of March 3, 1851 (Acts, 1850–51, p. 238) and February 23, 1853 (Acts, 1852–53, p. 108) did not deprive the state of its right to control the lands and make such subsequent disposition of them as it might deem proper. *Cannon v. Bent*, 1 Mo. 235; *Hamilton v. St. Louis County*, 15 Mo. 3; *Dunklin Co. v. Dunk. Co. Ct.*, 23 Mo. 449; *Barton Co. v. Walser*, 47 Mo. 189; *School District v. Weber*, 75 Mo. 558; *Re Taxes*, 78 Mo. 596. (3) The subscription of Butler county to the stock of the Cairo & Fulton Railroad Company, and the conveyance of the swamp lands at an agreed valuation to pay

such subscription, were authorized by the twenty-ninth, thirtieth and thirty-second sections of the act of February 24, 1853. (Acts, 1852–53, p. 447.) *Dunklin Co. v. Dunk. Co. Ct.*, 23 Mo. 449; *Chouteau v. Allen*, 70 Mo. 291; *Lingo v. Burford*, 112 Mo. 149. See, also, Act Feb. 19, 1866, sec. 8 (Acts, 1865, p. 111); See, also, Act, Feb. 27, 1857, sec. 6 (Acts, 1856–57, p. 271); See, also, Act March 21, 1868, sec. 1 (Acts, 1868, p. 92), recognizing validity of subscription and conveyance. (4) The decree in the case of Butler county against the Cairo & Fulton Railroad Company, John Moore, John Wilson and A. G. Waterman is null because: *First.* The decree was procured by fraud. *Second.* The decree was rendered against two dead men and a dissolved corporation. *Bollinger v. Chouteau*, 20 Mo. 89; *Sergent v. Rowsey*, 89 Mo. 617; *Graves v. Ewart*, 99 Mo. 13; *Moore v. Whitcomb*, 48 Mo. 543; *Chouteau v. Allen*, 70 Mo. 336; *Mumma v. Potoma Co.*, 8 Peters, 286; *Bank v. Colby*, 21 Wall. 609; *Pendleton v. Russell*, 144 U. S. 640; Morawetz on Corporations, sec. 1031. *Third.* Indispensable parties defendant were not before the court. R. S. of Mo. 1889, sec. 1994; Gen. Stats. of Mo. 1865, p. 329, sec. 19; Calvert on Parties, 207, 216; Viner Abr., B. 69 (Party); *Hallett v. Hallett*, 2 Paige, 14; *Mallow v. Hinde*, 12 Wheat. 194; *Shields v. Barrow*, 17 How. 130; *Barney v. Baltimore*, 6 Wall. 280; *Cunningham v. Macon County*, 109 U. S. 459; *Hardin v. Boyd*, 113 U. S. 764; *Gregory v. Stetson*, 133 U. S. 579; *Wall v. Thomas*, 41 Fed. Rep. 64; *Swan Company v. Frank*, U. S. Sup. Ct. unreported, March 21, 1893. (5) The subscriptions of Butler county to the stock of the Cairo & Fulton Railroad Company were authorized by the general railroad law of February 24, 1853. (Acts, 1852–53, p. 121.) *First.* Said law did not require the county court to ascertain the sense of the taxpayers of the county before making a

subscription. *Dunklin Co. v. Dist. Co. Dunk. Co.*, 23 Mo. 449; *Smith v. Clark*, 54 Mo. 68; *Spurlock v. Railroad*, 90 Mo. 199. *Second.* Yet if it be held that such law did require that a vote of the taxpayers of the county should be taken, such vote will be presumed to have been taken, in the absence of proof to the contrary. *Flagg v. Palmyra*, 33 Mo. 440–450; *State v. Weatherby*, 45 Mo. 17; *Smith v. Clark Co.*, 54 Mo. 58–75; *State v. Railroad*, 101 Mo. 136. *Third.* It appears by the recitals of the orders subscribing to the stock of the Cairo & Fulton Railroad Company introduced in evidence in this case, that a vote was in fact taken. Such recitals are conclusive, and can not be collaterally attacked. *Lingo v. Burford*, 112 Mo. 149; *Snoddy v. Pettis Co.*, 45 Mo. 361; *State v. Evans*, 83 Mo. 319; *State v. Young*, 84 Mo. 90. (6) The subscription of Butler county to the stock of the Cairo & Fulton Railroad Company, made by the order of its county court on the ninth day of December, 1856, was authorized by the act of December 10, 1855. The provisions of this act are fully set out in the brief of appellants. If the orders prior to May 1, 1856, were void because unauthorized by the act of December 10, 1855, the order of December 9, 1856, validated the subscription. *Railroad v. Marion Co.*, 36 Mo. 294; *Chouteau v. Allen*, 70 Mo. 327.

GANTT, P. J.—This is a suit in equity to set aside a decree in favor of Butler county rendered at the July term of the circuit court of Butler county, in 1869, and to cancel certain deeds, and patents, among them a patent from said county to the St. Louis, Iron Mountain & Southern Railway Company, dated December 10, 1874, and to quiet the title to the lands mentioned in the decree and said several deeds and patents.

The lands in controversy are swamp lands and

were conveyed by the secretary of the interior to the state under the act of congress of September 28, 1850 (9 U. S. Stats. at Large, p. 519).

The following acts of the legislature of Missouri relating to said lands were passed: March 3, 1851: "An act donating certain swamp and overflowed lands to the counties in which they lie" (Session Acts, 1850–1851, p. 238), which act did not apply to Butler and some other counties in the southeast, but on the twenty-third day of February, 1853, the provisions of the act of 1851 were extended to them (Session Acts, 1852–1853, p. 108).

February 24, 1853: "An act to authorize the formation of railroad associations, and to regulate the same" (Session Acts, 1852–1853, p. 121) sections 29 and 32 of which are as follows:

"Sec. 29. It shall be lawful for the county court of any county, and the city council of any city, to subscribe to the capital stock of any railroad company duly organized under this or any other act in this state; and the county court or city council subscribing or proposing to subscribe to such capital stock, may, for information, cause an election to be held to ascertain the sense of the taxpayers of such county or such city, as to such subscription, and as to whether the same shall paid by issues of county or city bonds, as the case may be, or by taxation."

"Sec. 32. Any county subscribing for railroad stock which shall have internal improvement funds or overflowed or swamp lands granted to it by the state, may apply such funds, or mortgage or sell such overflowed or swamp lands, to pay such subscription or any part thereof, and provide for the remainder, if any, by the tax as aforesaid * * *."

December 7, 1855: "An act to enable certain counties [Butler among the number] to transfer

swamp, wet and overflowed lands to the Iron Mountain, or Cairo and Fulton Railroad Company," whenever a majority of the voters of either of said counties shall petition the county court to do so. (Local Acts, 1855, p. 353.)

December 10, 1855, sixteenth section of which is as follows:

"Sec. 16. It may be lawful for any county court of any county in this state, having overflowed or swamp lands, to subscribe the same as stock to any railroad which may pass through such county, upon such terms and to be valued at such price, as may be agreed upon by the county court and the directors of the railroad company in which such stock may be taken." (Local Acts, 1855, p. 477.) A district county court was established by the act of March 1, 1855, which act provided that the court should "possess all the powers and perform all the duties that the respective county courts now possess or may perform in the said counties of Stoddard, Dunklin and Butler." Session Acts, 1855, page 474.

The following orders looking to the disposition of said lands were made by the county and district county courts respectively:

*First.* In the county court of Butler county, July 24, 1854: "Ordered by the court that the clerk open columns on the poll books for the purpose of taking the vote of the people for and against the county taking stock in the railroad."

*Second.* In the county court of Butler county, October 24, 1854: "It appearing to the satisfaction of the court that qualified voters of said county are in favor of subscribing $50,000 to the Cairo & Fulton Railroad, it is hereby ordered by the court that the aforesaid amount of stock be subscribed payable out of the proceeds of the sale of swamp lands, and it is

ordered that Daniel L. Jennings be appointed as agent to subscribe said stock and attend to the interests of said county in said railroad company and that a warrant be drawn upon the treasurer of this county in favor of the president of said railroad company for $2,500 payable out of swamp land fund to pay the five per cent. upon the amount of stock subscribed.''

Afterwards, on December 6, 1855, the district county court made an order reciting the county clerk's order and that the railroad was willing to take the swamp lands at $1 per acre, and ordered that when the lands were selected Daniel Jennings make deeds to the railroad and represent the county in voting the stock; and, on the same day, this district court subscribed $50,000 more to the capital stock to be paid for by the alternate sections of swamp lands at $1 per acre.

Afterwards, on March 5, 1856, Solomon Kitchen and H. H. Bedford, agents for the railroad, presented their report of their selection of swamp and overflowed lands amounting to one hundred thousand, one hundred and nineteen and ninety-four one-hundredths acres. At the same term the court ordered the clerk to certify to the register of lands at Jefferson City, that full payments had been made by the railroad company with a list of the lands. After the receipt of the clerk's certificate, and on the twentieth day of April, 1857, the governor issued a patent to the railroad company for said lands, which patent recites that it is made pursuant to the act of December 7, 1855.

On the twenty-third day of May, 1857, the Cairo & Fulton Railroad Company executed a deed of trust upon the lands in controversy and other lands to secure the payment of one thousand, six hundred bonds of $1,000 each to Waterman, Moore and Wilson, which deed was recorded in Butler county, December 15,

1859. On October 1, 1866, the Cairo & Fulton Railroad Company was sold under what is commonly called the "sell out" act passed February 19, 1866, amended by the supplementary act of March 19, of the same year, the eighth section of which provides that: *"Nothing in this act shall be so construed as to convey or to authorize the commissioners to convey to the purchasers of the Cairo & Fulton Railroad any of the lands subscribed by the counties to the stock of said road."*

December 16, 1871, Chas. P. Chouteau having been the owner of some of the bonds of said railroad company, filed his petition in the Mississippi county circuit court against Thos. Allen *et al.* to foreclose said deed of trust and in the supreme court of Missouri a decree in said cause was rendered in favor of said Chouteau, and as directed in said decree the lands in controversy, with other lands, were sold by a special commissioner of this. court, Mr. Chouteau becoming the purchaser thereof, and on December 19, 1886, he sold said lands, together with a large quantity of other real estate to the F. G. Oxley Stave Company and conveyed the same to F. G. Oxley, trustee of said company.

On the trial plaintiff offered in evidence a certified copy of the record and proceedings in said cause, presumably as a former adjudication of the matter now in controversy. On November 7, 1866, Butler county filed in the circuit court of that county its petition against the Cairo & Fulton Railroad company, and the said Moore, Wilson and Waterman, trustees, to cancel and set aside the patent from the state to the said railroad company and the deed of trust from the said railroad to the trustee. Service was had upon. Green L. Poplin, the president of the Cairo and Fulton Railroad, and upon the defendants, Moore Wilson and Waterman, by publication.

The files of this cause are lost. The record offered consisted of the affidavit for publication, order of publication, and the publication itself as to· the nonresident defendants, orders continuing the cause, which was pending about three years; judgment by default against defendants at various times; recitals of the filing of demurrer, and the decree itself annulling the patent made by the governor to the railroad company, and the deed from the railroad company to Moore, Waterman and Wilson, trustees, and all right, title or interest acquired by them in and to said lands, and revesting the same in Butler county. It now appears that Waterman, one of the trustees, had previously died at Philadelphia, Pennsylvania, in February, 1862, and that John Moore, another trustee, had died in Boston, Massachusetts, September 23, 1866.

In this connection, plaintiffs read in evidence, an extract of order number 5, of the board of trustees of the railroad company, reciting the death of Mr. Waterman and an appointment by John Wilson of Mason Brayman to succeed said Waterman as trustee, of date March 22, 1866. Defendant objected to this paper on the ground that it was hearsay, and that John Wilson was not a majority of said board and could not make said appointment.

Plaintiffs offered another paper writing signed by Waterman, Moore and Wilson appointing Brayman, of Springfield, Illinois, president of the board of trustees, of date May 7, 1858.· Plaintiffs also read in evidence an appointment by the board of directors of the Cairo & Fulton Railroad Company, of Henry H. Bedford as trustee to succeed John Moore, deceased, which appointment was made April 11, 1867, at Bloomfield, Missouri, and was attested by Green L. Poplin, president, etc., and T. W. Johnson, secretary.

The record recites the appearance of the defend-

ants. The files being lost, John W. Emerson, the attorney who represented Butler county in obtaining the decree, testified that the firm of Bedford and Owen and Mr. Chapman appeared generally for the defendants, and produced a copy of a motion to strike out the second amended petition, as follows:

"Butler County
    *v.*          In Butler County Circuit Court.
"Cairo & Fulton Railroad
Company, A. G. Waterman, John Moore *et al.*

"Now come the defendants and move the court to strike out the plaintiff's second amended petition herein for the following reasons:

"*First.* Because said petition contains scandalous matter.

"*Second.* The allegations herein are impertinent, redundant and immaterial.

"[Signed]  BEDFORD, OWEN & CHAPMAN,
     "Attorneys for the Defendants.
"Filed October 2, 1868.
"[Signed]     ISAAC V. TUBB,
            "Clerk."

Also a copy of a demurrer as follows, which copy Mr. Emerson testified he made at the time from the files and found among his papers:

"County of Butler, State of Missouri,
  Plaintiff,

    *v.*

"The Cairo & Fulton Railroad Company, John Moore, John Wilson and Albert G. Waterman,
  Defendants.

"In the county of Butler, at the March term of the circuit court of said county, A. D. 1867, the defend-

ants come and demur to the plaintiff's petition for the following reasons, to wit:

"*First.* There is a misjoinder of parties herein.

"*Second.* There are parties included in this suit who occupy entirely different positions.

"*Third.* The plaintiff states that the governor, pretending to act as the agent for plaintiff, wrongfully and illegally conveyed by deed to said Cairo & Fulton Railroad Company, one hundred thousand, eight hundred and sixty-eight and fifty-six hundredths acres of land, and does not make profert of said deed or make any excuse therefor.

"*Fourth.* Plaintiff states that on the twenty-third day of May, 1857, said Cairo & Fulton Railroad Company conveyed said lands to John Moore, John Wilson and A. G. Waterman without making profert of said conveyance, or any excuse therefor.

"[Signed]                    BEDFORD & OWEN,

"Attorneys for the Defendants."

Mr. Chapman, an attorney, testified that he was employed to aid in the defense of the action brought by the county to cancel the deeds and patents. James H. Vail was the judge before when the case was tried. Judge John W. Emerson and Ira E. Leonard represented the county. Bedford had been acting as a director of the company, and employed witness. Bedford was present in court when the cause was tried. Witness took no part in the final hearing, because Bedford and Poplin, had agreed to get his fee and failing to do so he notified them he would not appear and when the case was called he took no part in it. He remembered arguing motions and a demurrer for the defendants.

The contention of respondents is that the orders of the county and district courts aforesaid and the patents of the governor of the state made in pursuance of them, operated to transfer the title of said lands to the

Cairo & Fulton Railroad Company and the decree of the Butler circuit court was void because fraudulent and for want of necessary parties, while appellants insist, *first*, that in attempting to dispose of the lands said courts did not comply with the law, but disregarded its requirements; *second*, that whatever color of title the railroad company had was removed by the decree of the Butler county circuit court. Other facts will appear in the discussion in the opinion.

I. But two questions are presented by the record for determination in this court.

*First.* Were the subscriptions by the county court (county and district) of Butler county to the stock of the Cairo & Fulton Railroad Company and the conveyance of the swamp lands of that county to said railroad in satisfaction of said subscriptions, authorized by law?

*Second.* Ought the decree of the circuit court of Butler county, annulling the conveyances of said lands, be set aside for the reasons urged by the plaintiffs, to wit: *First*, because procured by fraud; and, *second*, because two of the defendants named in it were dead at the time of its rendition, and the railroad company, a dissolved corporation?

Unless the decree is vacated, it will be unnecessary to enter upon the discussion of the power of the county court to subscribe to the stock, and convey the lands in payment for it, for if it be conceded, that the subscriptions were lawful on their face and the patents and deeds sufficient in form, still, if they were obtained by fraud, as found and adjudged in the decree of the circuit court, they become inoperative as if they had never been. This, too, is the theory upon which the petition proceeds.

The primary purpose of the suit is to remove the cloud which this decree cast on plaintiff's title. The

attack upon the decree is twofold. The contention is that it was obtained by fraud and collusion, and lest the evidence might be insufficient to satisfy the chancellor on this point, it is urged that the decree is void in law because rendered against two dead men and a dissolved corporation. As to the proposition that the judgment was procured by fraud, the burden is assumed by the plaintiffs to establish that the judgment was fraudulently obtained.

Perhaps there is no subject upon which the decisions of this court have been more uniform and consistent than those in regard to the character of evidence required in courts of equity to vacate a final judgment. Beginning with *Jones v. Brinker*, 20 Mo. 87 and coming down to *Murphy v. DeFrance*, 105 Mo. 53, it has been uniformly held that the *"fraud* for which a judgment may be vacated or enjoined in equity *must be in the procurement of the judgment.* If the cause of action is vitiated by fraud, this is a defense which must be interposed, and *unless its interposition is prevented by fraud* it can not be asserted against the judgment." 2 Freeman on Judgments [4 Ed.], sec. 489; *Lewis v. Williams*, 54 Mo. 200; *Van Bibber v. Julian*, 81 Mo. 618; *Murphy v. DeFrance*, 101 Mo. 151.

Applying this test to the pleadings and evidence in this case, we have a final judgment rendered in a court of general common law and equity jurisdiction as long ago as 1869. That court unquestionably had jurisdiction of the subject-matter, and the parties litigant, so far as appears by the recitals of the judgment itself. To avoid this judgment it is claimed that it was obtained by collusion and the pretended appearances of counsel. To sustain this charge, the evidence shows that this cause was pending for nearly three years; that service was obtained upon Green L. Poplin, the president of the Cairo & Fulton Railroad, by his acknowledgment

of service upon the writ; that orders of publications were duly made and published against the defendants Moore, Wilson and Waterman, the trustees. It appears that the files of the case are now, and were, lost, long prior to the commencement of this suit; but Judge Emerson, who brought the action for Butler county, produced on the trial a certified copy of a motion signed by Chapman, Bedford and Owen, in which they appeared for defendants generally, and moved to strike out the plaintiff's petition, also a general demurrer.

Mr. Bedford, a witness for plaintiff, whose name as attorney was signed to these pleadings was shown to have been present in open court when this cause was heard and according to his statement, as a friend of the court, remonstrated against the court proceeding to judgment because the trustees were not in court. His testimony negatives *all idea of collusion between Judge Emerson, and his firm of Bedford and Owen*, who represented the defendants. There were also charges by innuendo that Emerson's brother had made a deed to Mr. Chapman, to show that Chapman was consenting to the decree, but the evidence of Chapman was that Bedford and Poplin had promised him a fee, and, relying upon their assurances that they would get it, he did appear with the defendants along with Bedford and Owen; but, as they neglected to pay him, he notified them six months before the trial that he would appear no further, and, though present in court, took no part in the trial. The attempt to show that Mr. Chapman received any of this land as a consideration for assisting in or permitting this judgment, we think entirely failed.

As to the other evidence, it appeared that Emerson did not know either of the trustees and knew nothing of the death of Moore or Waterman, and proceeded upon

the idea that they were both alive and that they had entered their general appearance by counsel.

The evidence tending to prove that the judgment was procured by any fraudulent practices is entirely too meager to sustain the judgment of the circuit court in setting it aside.

As was said in *Picot v. Bates*, 47 Mo. 390: ''More than twenty years have elapsed, and we are called on to say that a judgment regularly entered and long acquiesced in shall be impeached for fraud because merely the consistency of the account adjudged *can not now be shown.*''

But the court will not assume fraud after so long a time from mere obscurity. When it is considered that this judgment had been rendered two years before the action had been commenced in *Chouteau v. Allen,* and that the attorneys of Chouteau, in that case, were cognizant of its existence at that time; this long delay in attacking it should be explained by plantiffs. It is to be assumed that an abstract of the title would have disclosed it to plaintiffs when they bought these lands. Moreover Bedford claimed to have been duly appointed as trustee of these lands in 1867. He says he was in court when this decree was rendered. He was a member of the bar, and a trustee of this fund, and the statute gave Wilson, his co-trustee, three years as a matter of right to move to set aside this judgment, and make his defense, and yet, knowing and feeling an injustice was being perpetrated, he remained silent.

It is significant that Bedford at no time suggested the death of the trustees, Moore and Wilson, to the court. They were nonresidents of this state. The evidence now discloses that one died in Boston, the other in Philadelphia. There is not a word of evidence tending to show that Judge Emerson had the slightest notice of the death of either and the inference of fraud

on this account is without support. The conduct of Bedford is much harder to explain. He was a member of the bar. He claimed to have been a substitute trustee. He knew the object of this suit and instead of contenting himself with acting as an *amicus curiæ*, he should have suggested the death of his predecessor, Moore, and asked to be made a party defendant, and defend the trust which he now claims had been confided to his keeping, and not permitted Judge Emerson and Mr. Leonard, the counsel for the county, to proceed on the idea that Moore and Waterman were both alive. He owed this to the court of whose bar he was a member and he owed it to the beneficiaries of the trust he had assumed, but his laches in nowise attaches to the court and opposing counsel, both of whom were ignorant of the facts. The other evidence shows that a trial was had in open court which consumed some hours or more in putting in the evidence.

Nothing was hid from public view. The cause was on the docket for three years, with the knowledge of the president of the railroad, and the personal knowledge of Bedford, who claimed to be one of the trustees. To permit a decree to be vacated on the loose recollection and uncertain memory of witnesses after twenty years, would establish a most hurtful precedent. *Heffernan v. Howell*, 90 Mo. 344. Accordingly we hold that plaintiff failed to show the decree of the circuit court of Butler county was fraudulently procured.

II. Ought the judgment be set aside because Moore and Waterman were dead when it was rendered? In order to secure certain bonds issued by it, the Cairo & Fulton Railroad, on May 23, 1857, by its deed of trust conveyed the lands which it obtained from Butler county, together with other lands, to John Moore, John Wilson and A. G. Waterman, in trust to secure the payment of the bonds of said Cairo & Fulton Rail-

road Company, therein described, which said deed of trust was recorded in Butler county, Missouri, December 13, 1859.

This trust deed, after reciting the purpose for which it was made, "grants, bargains and sells unto said John Moore and John Wilson and A. G. Waterman, trustees, and *unto the survivor or survivors, successor and successors* of them forever all and singular said lands therein described."

The eighth clause of the said deed of trust is as follows: "That for the purpose of continuing and securing the due execution of the trusts hereby created, it is declared that all vacancies that may occur in the office of trustee by death, resignation or otherwise, shall be filled, thus—the first vacancy shall be filled by a majority of the members of the board of trustees as constituted, being in office at the time such vacancy shall take place, the next vacancy shall be filled by the said parties of the first part, and so on, alternately, until the end; and trustees so appointed shall fill the term and succeed to perform all the duties and have all the power hereby conferred upon the members of the board of trustees herein named and provided for. They shall constitute and appoint of their own number, or otherwise, a president of this board of trustees who shall be a member thereof; and who shall hold his office for such time, and have and exercise such powers and duties as they may confer and appoint, as fully and with like effect as if herein expressed. Such other officers and agents as shall be necessary to the execution of this trust may be appointed in such manner as they may determine—rate of compensation fixed and such rules and regulations made and carried into effect as they may deem necessary."

Plaintiff read in evidence, over the objection of defendants, the following paper:

"Office of the Board of Trustees of the Cairo & Fulton R. R. of Missouri.

"March 22, 1866.

"Under authority of the power vested in us by the certain deed of trust executed by the Cairo & Fulton Railroad Company of Missouri, dated May 23, 1857, we, as surviving and remaining trustees, hereby appoint and constitute Mason Brayman, of Illinois, a trustee, to fill the vacancy caused by the death of Albert G. Waterman, original trustee named in said deed. Witness our hand and official seals the day above written.

"[Signed]　JOHN WILSON, Trustee.

"MASON BRAYMAN, Trustee and Pres.

"(Bd. of Trustees)

"[SEAL]

"(C. & F. R. R. Co.)"

And a similar paper, signed by the three trustees appointing said Brayman president of the board of trustees. Neither of these papers were acknowledged or recorded in the recorder's office of Butler county, nor was there any evidence that Butler county or its attorneys had any notice whatever of said appointments.

A similar appointment of Henry H. Bedford, *of date April 20*, 1867, by the board of directors of the Cairo & Fulton Railroad Company, signed by its president, Green L. Poplin, was read in evidence over the objection of the defendants. No notice of this appointment was given defendant, and said substitution was not recorded in the county of Butler. It is claimed by plaintiffs that the Cairo & Fulton Railroad was dissolved by the sale thereof under the "sell out" act of the general assembly of February 19, 1866.

Whereas defendants insist that by the very terms of that act these lands were not affected, the proviso of said act being, "*Provided that nothing in this act shall be so construed as to convey or authorize the commissioners*

*(appointed thereunder)* to convey to the *purchasers of the Cairo & Fulton Railroad Co. any of the lands subscribed by counties to the stock of said road,"* and that for the purposes of its unsettled liability to the counties subscribing said stock, it was still a corporation. In this connection, also, the act of March 21, 1868, is invoked by plaintiffs as a confirmatory act, and by defendant as recognizing the right of the several counties in these lands.

That act is entitled "An act for the final settlement of the Cairo & Fulton Railroad Company, and to provide for the payment of all just claims made prior to May, 1861, and to distribute the unappropriated stock." By this act the legislature authorized the county courts that took stock in the Cairo & Fulton Railroad to appoint agents to look after their interests, and require the old company to turn over to them all lands undisposed of by the company, and after selling such lands as were necessary to pay certain claims, to "turn over the remaining *unappropriated* lands to the several counties to which it originally belonged." (Acts, 1868, p. 92.)

It appears by the evidence of H. H. Bedford, that this company held annual elections in 1865, 1866 and 1867, and elected officers, and it was by this board so elected he was appointed trustee in this deed of trust, in April, 1867.

Under this state of facts plaintiffs insist that the Cairo & Fulton Railroad Company was dissolved and its board of directors were not made defendants, its property is not bound by decree and Moore and Watermann being dead and their successors, Brayman and Bedford, not having been made defendants, the trust fund in these lands could not be affected. On the part of defendants, it is maintained that, as the corporation was served through its president, it was in court, and

that by the terms of the deed of trust, upon the death of Moore and Waterman, Wilson, the surviving trustee, took the trust estate by survivorship, and as he had been duly served, the decree bound the whole trust estate, and can not be held void after this great lapse of time.

Counsel for plaintiffs have referred to the decision of this court in *Chouteau v. Allen*, 70 Mo. 327, but as the decree of the circuit court of Butler county was rendered some two years before the action was commenced in *Chouteau v. Allen*, and as none of defendants in this case were parties in that action, or are claiming under any party to that action, it is very plain that they are not estopped by the judgment in *Chouteau v. Allen;* indeed, the learned counsel for plaintiffs concede this in their brief.

The record is entirely silent as to when Chouteau acquired the bonds which were the basis of his action against Allen, and there is no evidence that he owned any of those bonds when the suit of *Butler County v. The Railroad Company* and the trustees was commenced in 1866, or for that matter, that said bonds had been issued to anyone at that time. It is conceded by plaintiffs that it was not necessary to make the bondholders, if any, parties to the said suit to set aside the deed of trust; that if the trustees were made parties, and notified, that was sufficient. This is the undoubted rule in trusts of this character. Whatever binds the trustee in proceedings to enforce the trust, binds the bondholders, and whatever forecloses the trustee, in the absence of fraud or bad faith, forecloses them. *Kerrison v. Stewart*, 93 U. S. 155–160; *Richter v. Jerome*, 123 U. S. 233; *Shaw v. Railroad,* 100 U. S. 605; Jones on Railroad Securities, secs. 363 and 438.

Leaving out of view for the present, the power to substitute successors to those of the trustees that might

die, it is unquestioned that in the absence of provisions in clause eight of the deed of trust, upon the death of Waterman and Moore, the trust devolved upon Wilson as sole surviving trustee. This was the rule at common law and was unaffected by our statute abolishing joint tenancy in certain cases. Gen. Stat. 1865, ch. 108, sec. 12; 1. R. S. 1855, sec. 13, p. 357; *Stewart v. Pettus*, 10 Mo. 755; 1 Perry on Trusts, sec. 343; I Lewin on Trusts, pp. 261 and 262.

But it is urged that, upon the death of Waterman, Brayman was appointed his successor. This presents a proposition not without difficulty. If Brayman was not a trustee in whom this title was vested prior to Waterman's death, then it is clear that Wilson alone was not empowered to appoint him because it required *a majority of the board to make the appointment*, and if he was not a member he could not participate in the appointment of himself.

If, on the other hand, he was already a member, what was the purpose of appointing him anew? Again, this appointment, if made, was made in Springfield, Illinois. If plaintiff is right, it was an instrument in writing substituting a trustee who thereby became seized of the title to real estate in Missouri. This writing was not acknowledged and recorded in this state, and no one dealing with said lands was chargeable with notice of such substitution, and it is not claimed the county had such notice. But, as already stated, the plaintiffs now say that the circuit court's decree should be set aside because Brayman and Bedford were not made parties defendant.

It is well to bear in mind that this objection to that decree is not made by anyone who was a party to it when it was rendered, or had any interest at that time that could be affected by it. This attack is made by one who was and is a stranger to that suit, twenty

years after its rendition. In *State ex rel. v. Clymer*, 81 Mo. 122, this court approved the statement in Freeman on Executions, section 75, to the effect that "none but the parties to the suit will be allowed to interfere with its management," and that "none but the parties to the writ who are liable to be injured by it can complain of the irregularities by which it may be infected." *Ellis v. Jones*, 51 Mo. 180.

But if it be said that as a purchaser from one who purchased the lands under the judgment of *Chouteau v. Allen*, plaintiffs have a right to attack this judgment, the answer is that the sale under the decree in *Chouteau v. Allen* was made by a special commissioner, John H. Fisse, appointed by this court, and not through Brayman and Bedford, or either of them, and any title Mr. Chouteau obtained, did not rest upon a recognition of Brayman or Bedford as trustee by this court. Neither the Cairo & Fulton Railroad Company, nor Wilson, Bedford or Brayman have, in all these years, sought to avoid that judgment, and a stranger to that judgment ought not, and will not, be allowed to complain that all the necessary parties were not before the court. The suit was commenced and prosecuted against the parties in whom the record title appeared at that time.

Moreover, "in voluntary or express trusts, no title vests in the proposed trustee, by whatever instrument it is attempted to be transferred, unless he expressly or by implication accepts the office, or in some way assumes its duties and liabilities." 1 Perry on Trusts, sec. 259; *Armstrong v. Morrill*, 14 Wall. 138; *Roberts v. Moseley*, 51 Mo. 282.

It is not a violent presumption in favor of the judgment of a court of general jurisdiction to presume that it sufficiently appeared to the circuit court of Butler county, that neither Brayman nor Bedford had

ever accepted the trust, or performed any action in regard to its execution from which their acceptance could be presumed, and certainly we find nothing in this record which could rebut a finding by the circuit court that they had disclaimed said trust. *Brandon v. Carter*, 119 Mo. 572. And in such a case the court might have dispensed with the necessity of bringing them in. Story's Eq. Pl. [1892, 10 Ed.], sec. 214*a*.

As to Bedford, it would be utterly unconscionable to permit him at this late day to open up said proceedings in view of his knowledge and testimony. But if plaintiffs are right, that the corporation was dissolved by the "sell out" act of 1866, nothing can be more conclusive than that Bedford was not a necessary party, because, according to their own showing, he was not appointed a trustee until 1867. On the other hand, if the railroad company was not dissolved, it is clear that, having appeared as counsel of record in that case for Wilson, trustee, and for the company, he is estopped by his conduct in not suggesting his appointment as trustee, and so are those who claim under or through him. It results that, in our opinion, the showing is insufficient to justify the circuit court in setting aside the judgment of the circuit court of Butler county because they were not parties defendant, as asked by plaintiffs.

The remaining ground for vacating that judgment is that "the president and directors" of the Cairo & Fulton Railroad Company, as such, were not made defendants, after its dissolution. Again, bearing in mind that the action in favor of Butler county was commenced in 1866, and that at that time the decision in *Moore v. Whitcomb*, 48 Mo. 543, had not been rendered, and that the general appearances of the company had been entered by the president of the company, and no decree of dissolution had been rendered

against it, it is not at all strange that the circuit court should have proceeded against the corporation through its chief officer.

The state had expressly reserved these swamp lands from the operation of the "sell out" act, and the title to them remained in the corporation in trust for its creditors and stockholders. The mere insolvency of the corporation; the sale of the larger portion of its assets and its inability to proceed with the purposes of its incorporation would not necessarily work a dissolution. *Hill v. Fogg*, 41 Mo. 563; *Bank v. Robidoux*, 57 Mo. 446; *Hotel Co. v. Sauer*, 65 Mo. 279.

The decision of *Moore v. Whitcomb*, 48 Mo. 543, *supra*, was upon demurrer only; whether the court, with all the facts and the provisions of the "sell out" act before it, would have held the corporation dissolved for all purposes, we greatly doubt; but it is clear that the president, Poplin, was in court, and no suggestion of dissolution was pleaded, and if the corporation was dissolved, the failure to proceed against the president and directors, as trustees, was simply an irregularity that could have been amended if seasonably prayed, but it is no ground now for vacating said judgment after this lapse of time at the instance of one who was neither a creditor nor stockholder at that time.

In *Dunklin County v. Chouteau*, 120 Mo. 577, this court, at the last term, held that the great delay of Dunklin county in seeking to avoid the patent under which Mr. Chouteau held the lands of that county barred the county. In this case it appears that Butler county, as soon as the condition of society after the war would permit, began its action and repudiated the means by which it had been deprived of this great body of valuable timber lands. It proceeded in a court of general jurisdiction. The action was pending

for three years. It was determined in open court. No secrecy marked the proceedings and a final judgment was rendered in 1869, decreeing that these lands had been obtained by fraudulent practices.

That judgment had stood unimpeached *directly* or *indirectly*, until this action was commenced, a lapse of about twenty years. If the laches of Dunklin county deprived her of relief, certainly the diligence of Butler county should be rewarded, and Butler county may invoke the reasoning of the *Dunklin County case, supra,* and insist that the laches of those claiming these lands adverse to the county, has estopped them from attempting to annul the judgment by which these lands were restored to the county. Our conclusion is that the judgment of the circuit court should be reversed and the cause remanded with directions to the circuit court to enter a decree dismissing the bill of plaintiffs. All of this division concur.