AMERICAN STAVE & COOPERAGE CO. v. BUTLER COUNTY.

(Circuit Court, E. D. Missouri, E. D.    March 15, 1899.)

No. 4,037.

1. COUNTY—POWER TO MAKE CONTRACT—SALE OF SWAMP LANDS.

A Missouri county, having power, under the statute, to sell its swamp lands, the proceeds to be devoted to their reclamation, and any surplus to be paid into the school fund, entered into contracts with a railroad company by which the latter, in consideration of the conveyance to it of certain swamp lands, agreed to construct levees for the drainage of swamps. No right in such levees, or to their use when completed, was reserved to the railroad company. As constructed, they were continuous embankments, without culverts, bridges, or trestles, were fairly well constructed for the purpose of drainage, and were accepted by the county officers, and a conveyance of the lands made. *Held*, that the transaction was not ultra vires on the part of the county, though its real purpose may have been to secure the construction of a railroad along such embankment.

2. SAME—LACHES—ACQUIESCENCE IN CONVEYANCE.

A county acquiesced in a conveyance of certain swamp lands made by its officers, for 20 years or more, without objection, recognizing the grantee as the owner, and collecting taxes from the lands. *Held* that, though the transaction by which the lands were disposed of may have been voidable, such acquiescence amounted to a ratification, and the county was barred by its laches from asserting title, as against its grantee.

3. ESTOPPEL—GRANTOR IN DEFECTIVE DEED.

A vendor who undertook to deliver a sufficient conveyance cannot take advantage of a defect in his own deed.

4. QUIETING TITLE—EQUITABLE JURISDICTION OF FEDERAL COURT—POSSESSION OF COMPLAINANT.

A circuit court of the United States may entertain a suit in equity to quiet title to lands, where the complainant is in possession.

In Equity.

E. S. Robert, for complainant.
Wood & Douglas, for defendant.

ADAMS, District Judge.    This is a proceeding to quiet the title to certain lands, known as "swamp lands," which the complainant's grantor, the St. Louis, Iron Mountain & Southern Railroad Company, claims to have acquired from the defendant county by three certain deeds, dated, respectively, January 31, 1871, December 10, 1874, and December 21, 1874. The considerations for these conveyances are found in two certain contracts entered into by and between Butler county

and the railroad company, of dates, respectively, July 13, 1870, and December 28, 1872. These contracts, when read together, obligated the railroad company to construct certain levees on the Little Black river through the Neely swamp, along the St. Francois river and along Black river, all in Butler county; and also to construct one or more railways within said county, in such way that the roadbed should be raised above high-water mark. It appears that this work was so done as to meet the approval of the duly-constituted officials of Butler county, and the deeds of 1871 and 1874, above referred to, were executed and delivered, as performance, on the part of Butler county, of the aforesaid contracts. It is now contended by the defendant county that the intent and purpose of the contracts referred to were not to construct levees for drainage purposes, but to secure the building of railways through the county, by donating the swamp lands in question to the railroad company; and that the contracts referred to, in so far as they contemplated the construction of levees for drainage purposes, were a subterfuge resorted to by the parties to give color to their unlawful project. The record contains much evidence, pro and con, upon this issue. The Neely swamp levee was fairly well constructed to serve the purpose of drainage of that swamp. It was a continuous embankment, without culverts, trestles, or bridges, and with no right reserved to the railroad company to ever employ the same as its road way or bed. This particular levee is therefore not within the condemnation of the rule announced in the cases of Railway Co. v. Hatton, 102 Mo. 45, 14 S. W. 763, and St. Louis, C. G. & Ft. S. Ry. Co. v. Wayne Co., 125 Mo. 351, 28 S. W. 494. The fact, however, that, soon after the construction of this levee was finished, the county gave the railroad company the right to use it as a roadbed, on condition that it would at all times maintain it as an effective levee, casts some discredit upon the real intent of the original transaction. The proof also shows that the levee work done by the railroad company along the Black river, Little Black river, and St. Francois river, under said contracts, was done to the expressed satisfaction of the county officials in authority at the time. If this does not appear clearly by the proof, it is presumed from the execution of the deeds, which was only to be done after the work was completed. Although the doing of this work is not mentioned specifically in the order of the county court directing the execution of the last two conveyances of 1874 to the railroad company, as a consideration for the conveyances, it is fairly comprehended within the general language employed. Not only so, but the proof shows that this work was either paid for by the conveyance of 1874, or not at all. I have no difficulty in finding, from the proofs, that the doing of this last-mentioned work was the substantial consideration for the conveyances of 1874. Whether Butler county secured the construction of any railroads throughout the county, as an additional consideration moving it to the execution of these conveyances, or not, I do not need now to consider. There is, as already stated, a valuable consideration expressed in the contracts of 1870 and 1872, and for the conveyances made in pursuance thereof, of dates 1871 and 1874; and these contracts were clearly within the power of the county court to make. Its first trust and duty, with respect to all its swamp lands,

were to use the same for the purpose of securing the drainage of the swamps. This purpose was the ostensible object of the contracts in question, and, on the authority of the cases already cited (Railway Co. v. Hatton and St. Louis, C. G. & Ft. S. Ry. Co. v. Wayne Co., supra), these contracts were not ultra vires.

In expressing the foregoing views, I am not oblivious to the historical facts connected with the swamp land in question in this state; neither do I underestimate the force of the evidence to the effect that, through the instrumentality of a friendly land commissioner, and within the latitude afforded by the general language of the contracts, an opportunity for the exercise of partiality to the railroad company was afforded; and I do not doubt but that, in the desire for securing railroads through the county, which generally prevailed 25 years ago, its officers lent a willing ear to any plausible scheme to that end; and, if the county had seasonably instituted some proceedings for rescinding the contracts and conveyances in question, it may be that relief could have been afforded. But a different question is raised at the present time. The railroad company, upon securing title to the lands in question, in 1871 and 1874, proceeded to exercise such acts of ownership and control over them as their locality and condition permitted. It, and its rival claimant to title, Mr. Chouteau, paid the taxes duly assessed by Butler county for a period of 20 years or more. During this period, and until the year 1894, the county at no time suggested, by act, word, or deed, that it claimed any interest in the lands involved in this case, but apparently fully acquiesced in the title of the complainant's grantor, the St. Louis, Iron Mountain & Southern Railroad Company. In 1894, the county, for the first time, pretended to own the lands. By an order of its county court, made of record on the 2d day of October, 1894, it first asserted a claim to ownership. By this and other successive orders, of dates, respectively, December 31. 1894, and April 9, 1895, it asserted an ownership of the same, and undertook to make, and did make, a contract looking to the disposition thereof. These several orders, and the contracts involved in them, standing of record in the public records of the county court, are a serious menace to the complainant's title, and clearly indicate a purpose on the part of the county to repudiate its conveyances to the railroad company of 1871 and 1874, and to resell the lands so conveyed, to others. Not only does this appear from an inspection of such records, but the defendant's answer in this case presents a clear statement of its present attitude of resistance to complainant's title, and its determination to add additional embarrassments to the secure enjoyment and free alienation of the same. It is altogether too late for the county to take any such position. Its acquiescence for 20 years or more effectually bars it from any attempt at rescission at this late day. Applying the principle announced by the supreme court of the United States in the case of Boone Co. v. Burlington & M. R. R. Co., 139 U. S. 684, 11 Sup. Ct. 687, the county, by its delay or laches, has effectually ratified what was, at the worst, but a voidable transaction between it and the railroad company. To the same effect, also, are the cases of Dunklin Co. v. Chouteau, 120 Mo. 577, 25 S. W. 553, and F. G. Oxley Stave Co. v. Butler Co., 121 Mo. 614, 26 S. W. 367.

The objection made to the deed of January 31, 1871, that the commissioner who executed it failed to affix his scrawl or seal, is unavailing in this action against Butler county. The deed, if not valid to pass the legal title, clearly passes the equitable title, as against Butler county, which received the consideration, and undertook to deliver a sufficient deed of conveyance therefor. Wilcoxon v. Osborn, 77 Mo. 621. The complainant, being in possession of the lands in controversy, is, by authority of Sharon v. Tucker, 144 U. S. 533, 12 Sup. Ct. 720, and Sanders v. Devereux, 19 U. S. App. 630, 8 C. C. A. 629, and 60 Fed. 311, entitled to the equitable relief prayed for. Counsel may prepare a decree.