RUMMEL v. BUTLER COUNTY et al.

(Circuit Court, E. D. Missouri, E. D. March 15, 1899.)

No. 4,034.

1. UNITED STATES COURTS—FOLLOWING STATE DECISIONS.
Decisions of a state court of last resort, which have become rules of property as to land titles within its limits, will be followed by the United States courts sitting therein.

2. SAME.
Decisions of a state court of last resort construing a state statute will be followed by United States courts.

3. MORTGAGES—VALIDITY—ESTOPPEL—LACHES.
Where the validity of a mortgage of land by a county to secure payment of a railroad stock subscription was not questioned for more than 30 years after its issuance, and until after the property had been sold under foreclosure and passed to bona fide purchasers, the county is estopped by such laches from thereafter claiming that the mortgage was invalid.

4. QUIETING TITLE—PURCHASER WITH NOTICE.
Where the holder of the legal title to swamp lands had such actual possession as the lands were susceptible of, he is entitled to a decree quieting his title, as against a subsequent purchaser from the common grantor, with notice of the record title.

In Equity.

John F. Shepley, for complainant.
M. L. Clardy, E. S. Robert, and Wood & Douglas, for defendants.

ADAMS, District Judge. This is a suit to cancel certain alleged conveyances affecting a large quantity of swamp lands situate in Butler county, Mo., as clouds upon complainant's title. The larger portion of these lands is embraced in the mortgage, of date May 23, 1857, executed by the Cairo & Fulton Railroad Company to Moore, Wilson, and Waterman, trustees, to secure the payment of an issue of $1,600,000 in bonds of said railroad company, and is subject to the considerations which constrained this court, in the case of Bump v. Butler Co. (decided at this term) 93 Fed. 290, to hold that the decree of 1869, rendered in the suit of Butler county against the Cairo & Fulton Railroad Company et al., is conclusive against Bump's legal title. It is unnecessary to restate the reasons which resulted in that holding. The same result is necessarily reached in this case with respect to all of the lands in controversy which are in the same

situation with respect to title as those involved in the Bump Case. As to any lands, therefore, described in complainant's bill in this case which are embraced in the mortgage of 1857, foreclosed by the decree of the supreme court of Missouri in 1879, and purchased by Charles P. Chouteau, the complainant in this case is entitled, for the reasons stated in the Bump Case, to no relief. But different questions are presented in this case with respect to 3,040 acres of land, described in complainant's bill as situate in township 23, range 3 E. These lands are known, and will hereafter be referred to, as "interest lands."

By reason of the claim of certain settlers to some parcels of land patented to the railroad company by the county in satisfaction of the two subscriptions of that county to the capital stock of the Cairo & Fulton Railroad Company, of date, respectively, October 24, 1854, and December 6, 1855, the county of Butler on September 23, 1858, conveyed, in exchange therefor, to the railroad company, the above-mentioned interest lands. The railroad company afterwards, on October 6, 1858, conveyed said interest lands, by a supplemental deed in the nature of a mortgage, to Moore, Wilson, and Waterman, under and subject to the same trusts as were expressed in the mortgage of May 23, 1857, executed by the railroad company to secure the payment of its bonds. Mr. Chouteau, as holder of said bonds, on June 6, 1886, instituted a suit to foreclose the supplemental mortgage of 1858. This suit resulted in a decree of foreclosure, and a sale of the mortgaged lands, by a commissioner appointed for that purpose, to the grantor of Charles P. Chouteau, who, after having acquired the title, in 1893 sold and conveyed the lands so by him acquired to the complainant in this case. The validity of this supplemental mortgage was not involved in, or affected by, the decree of 1869; but the defendants assail this title on the ground that said subscriptions of Butler county to the capital stock of the railroad company were made without first having secured the consent of the taxpayers of the county at an election held for that purpose, and claim that for this reason the title to the said interest lands in fact never passed out of Butler county by the deed of September 23, 1858, to the railroad company, and, as a necessary consequence, never passed by the supplemental mortgage of 1858, or the sale under the foreclosure proceedings in 1886. Several persons, who, according to the averments of the bill, claim different portions of these lands, were originally made defendants. Some of them answer, disclaiming any right in and to the lands in question; and the complainant, prior to the submission of this cause, dismissed his bill as to all others who were alleged to have some claim to these interest lands, except Butler county and one John Mangold. So far as the interest lands are concerned, therefore, the controversy stands between the complainant, holding title under Mr. Chouteau, and the defendant Butler county, with respect to all of said interest lands except the S. W. ¼ of section 27, township 23, range 5, which, it appears, was sold nine years ago by Butler county to John Mangold.

The defendants not being aided by the estoppel of the decree of 1869 with respect to their title to these lands, the question whether or

not the above-mentioned subscriptions of Butler county to the stock of the Cairo & Fulton Railroad Company were valid, notwithstanding the fact that there was no antecedent election to secure the assent thereto of the taxpayers of the county, must be disposed of. I do not regard this as an open question in this state at the present time. The cases of Dunklin Co. v. Dunklin Co. Court, 23 Mo. 449; Barrett v. Court, 44 Mo. 197; Chouteau v. Allen, 70 Mo. 290; and Dunklin Co. v. Chouteau, 120 Mo. 577, 25 S. W. 553,—hold, in effect, that the want of such an election did not, in the light of contemporaneous legislation, invalidate the subscriptions. Whether this conclusion is reached by giving force and effect to the act of December 10, 1855, as curing the defects arising from want of such election, provided the deeds were made after the act of December 10, 1855, went into effect, or whether the conclusion is reached for other considerations, is immaterial. These decisions, as Judge Black remarks in Dunklin Co. v. Chouteau, supra, have become rules of property. They are also, under well-recognized authority, binding upon this court, as a construction of local laws by the court of last resort in this state.

There is also another ground which, in my opinion, precludes the county of Butler from setting up the invalidity, if there be any, of the subscriptions. The supplemental mortgage of 1858 stood unchallenged by Butler county, or any other person holding under it, from its date,—certainly up to nine years ago, when, according to the proof, Butler county sold one-quarter of a section of the land described in said mortgage to John Mangold,—and, except for that single sale, unchallenged until Butler county entered into the contract with George B. Wheeler recorded in the records of the county court of Butler county on the 2d day of October, 1894. By this and other orders of the county court of Butler county, found recorded upon its records under the dates of December 31, 1894, and April 9, 1895, it is clear that that county asserted an ownership over the lands in dispute, and undertook to make contracts looking to their disposition. As remarked in the case of American Stave & Cooperage Co. v. Butler Co. (just decided) 93 Fed. 301, these several orders, and the contracts involved in them, constitute a menace to complainant's title, and clearly indicate a purpose on the part of Butler county to repudiate its conveyance to the Cairo & Fulton Railroad Company, of date 1857, and to resell the lands, so conveyed, to others. During all this period, then,—from 1855 up to 1894,—Butler county was silent, when it ought to have spoken, and declared its subscriptions to the stock of the railroad company invalid and void. During this period, bonds secured by the mortgage executed by the railroad company were issued and sold, a foreclosure under the mortgage followed, the lands were successively purchased and sold, and finally the title has been lodged in the complainant in this case, who, so far as the record shows, is a purchaser without any knowledge, of record or otherwise, of any claim of Butler county to the lands in question. In the midst of litigation assailing nearly all, if not all, other titles in the several counties possessing swamp lands, the title of record of these so-called interest lands has never been questioned until, as already stated, in 1894, with the single exception of a sale to John Mangold already

referred to. With the general disposition of Butler county, as shown by historic litigation, to assert all manner of claims to these lands, it is reasonable to believe that the failure to do so with respect to these so-called interest lands for 30 or 40 years persuaded purchasers that Butler county made no claim thereto. At any rate, I am clearly of the opinion that it cannot now, at this late day, be permitted to say aught against the legal title as it stands in the complainant. Its acquiescence for 30 or 40 years bars it from any attempt at rescission of its subscriptions. The county must be held to have effectually ratified its subscriptions, if, indeed, they were not strictly valid, by its long delay and laches in asserting any claim to the contrary. Boone Co. v. Burlington & M. R. R. Co., 139 U. S. 684, 11 Sup. Ct. 687.

The quarter section of land purchased nine years ago by defendant John Mangold stands in no different situation than the balance of these lands. He purchased with his eyes wide open. The record title was clear against him, and his title was taken from Butler county with constructive knowledge, at least, thereof. The complainant, having that constructive possession which follows the legal title, and having also all such actual possession of these interest lands as they are susceptible of, is entitled, under the authority of Sharon v. Tucker, 144 U. S. 533, 12 Sup. Ct. 720, and Sanders v. Devereux, 19 U. S. App. 630, 8 C. C. A. 629, and 60 Fed. 311, to the relief prayed for as to such interest lands. It results that the bill must be dismissed as to all the lands except those involved in the supplemental mortgage, and hereinbefore designated as "interest lands"; and as to these lands there will be a decree as prayed for, and counsel may prepare the same.